## ANDERSON *v.* SAVANNAH PRESS PUBLISHING COMPANY.

1. Assignments of error upon a refusal to allow a witness to answer a given question propounded during his examination, and which contain no statement of the testimony sought to be elicited by such question, cannot be considered. The burden of showing error being upon the party excepting, he must show that the testimony which would have been elicited, had the question propounded been answered, would have been relevant.

2. While upon the trial of an action instituted to recover damages for the publication of an alleged libel, the defendant is bound to prove a plea of justification, and nothing short of a preponderance of the evidence will satisfy this requirement, it is not necessary that such evidence be produced by him; it may as well be produced by the other side, and hence a request to charge which made the production of such evidence by the defendant himself the test of its sufficiency, was properly refused.

3. If the preponderance of the evidence be not in favor of a plea of justification filed in such an action, the plaintiff is entitled to recover, and the production or non-production of certain other evidence which, if produced, would tend further to weak-

en the defendant's case, cannot be a relevant circumstance upon the trial of such a plea; and therefore the court properly declined to give a request to charge upon the effect of the non-production of such evidence by the defendant.

4. Where the plea to such an action is one of justification only, and the fact that other persons may have likewise slandered the plaintiff and the fact that rumors to the same effect as those published were current were not relied upon by the defendant in his plea, the court properly declined to instruct the jury: "that others may have slandered plaintiff, if such be the fact, is no defense and cannot lessen the damages to which the plaintiff may otherwise be entitled. So rumors to the same effect as those published constitute no excuse for the publication of them"; and particularly is this true, when the whole case is made by the presiding judge to turn upon the truth or falsehood of the alleged libel, under an instruction which was as follows: "Whatever charge the publication does contain the defendant alleges to be true and is bound to prove the truth thereof at this trial, and that is the issue between the parties."

5. There was sufficient evidence to authorize the verdict, and the court did not err in overruling the motion for a new trial.

Argued February 17,—Decided March 8, 1897.

Action for libel. Before Judge MacDonell. City court of Savannah. November term, 1895.

*R. R. Richards* and *A. C. Wright*, for plaintiff.
*Garrard, Meldrim & Newman*, for defendant.

ATKINSON, Justice.

Anderson sued the Savannah Press Publishing Company for damages for the publication of the following alleged libel:

"Paying a Bonus.

Enterprise of a Railroad Master Mechanic.

Why a Central Railroad Workman Was Dismissed.

The South-Bound and the Central's Agreement—Repairing a Locomotive. Bonus of an Overcoat.

A good story has leaked out in connection with the administration of the ex-master mechanic of the Central Railroad, and it is now believed that the facts that fathered this story were directly responsible for the discharge of the master mechanic. When the South Bound Railroad began operations here, instead of building shops it made a contract

with the Central to do all of its repair work at cost and ten per cent. added. It seems that everything moved along satisfactorily until master mechanic Anderson took charge of the shops. Then the South Bound experienced considerable difficulty in getting its engines and cars after they went in for repairs. Sometimes they would lay untouched in the shops for weeks.

### The Overcoat Offer.

Finally the South Bound determined to try a new tack. They needed an engine bad last Christmas, and one had been lying up with the Central for weeks. They sent for the master mechanic, and told him if the South Bound could get that engine by Christmas, he would make him the present of a $50.00 overcoat. Mr. Anderson responded with alacrity, "all right"; and the morning after his conversation, the engine was upon the blocks, and in the hands of half a dozen skilled mechanics.

### Preferred the Cash.

Two days before Christmas the engine was turned out of the shops, and Mr. Anderson called upon the South Bound to notify them of the completion of the work. Incidentally, of course, he brought up the overcoat present, and told the South Bound if it were all the same he preferred taking $50.00 in cash instead of an overcoat. They agreed, and drew up a carefully worded voucher for the money, which Mr. Anderson signed. This voucher was preserved for further use, and eventually led to the decapitation of the man who had affixed his name.

### Wanted a Salary.

The new move of the South Bound, instead of securing appreciation from Mr. Anderson for the kindness extended to him, only whetted his appetite for more favors of a similar nature, and afterwards they realized that they were expected to offer a bonus for all quick work. They naturally objected, and then Mr. Anderson approached him for a stipulated salary. This was the straw that broke the camel's back. They took all repair work away from the Central, and turned it over to the Richmond & Danville shops at Columbia, under the same terms as the original contract with the Central. They did not have to give any bonus, and secured prompt attention to his rolling-stock. As a result of taking his work away from the Central, a number of good mechanics have been suspended.

Supt. Kline Mad.

When Supt. Kline assumed charge of the Central, he called upon the South Bound, and asked why the work of the latter road was being carried to Columbia when the Central was equipped and anxious to accept the contract at the same terms. They promptly laid all the facts of his dealings with Mr. Anderson before Supt. Kline, and furnished him proof in the shape of the little voucher for $50.00 signed by the master mechanic. It is needless to say the Central's new superintendent was wrathy. He expressed himself in unmistakable terms about such conduct, and a few days afterwards Mr. Anderson was surprised to receive a notice of summary discharge. The Central has again secured the work of the South Bound, and there is not much probability of the revival of the bonus system."

Among other pleas, the defendant filed a plea of justification. The evidence was decidedly conflicting, but upon the whole, was of such a character that the jury might properly have found a verdict in favor of the defendant upon the plea of justification. There was a verdict for the defendant, and plaintiff's motion for a new trial being overruled, he excepted. The motion was upon the general grounds, that the verdict was contrary to law, evidence, etc., and because it was contrary to a specified portion of the charge.

(1) Further, because the court refused to allow J. L. Archer, plaintiff's witness, to answer the following question asked him by plaintiff's counsel: "What was the reason for Mr. Anderson's discharge by the Central Railroad authorities?" the witness having previously stated that he could swear positively upon that point, because he was private secretary to Mr. Theo. D. Kline, the superintendent of the Central Railroad, and the officer who discharged Anderson, and that he had obtained his knowledge from Mr. Kline in that relation of private secretary; the ruling being placed upon the ground that witness could only have known the fact from statements made by Kline, and such statements were not made in the presence of defendant. Further, because the court refused to allow plaintiff to testify, as he

offered on the witness stand to do, what was the cause of his discharge by Mr. Kline, superintendent, although the witness swore that he was prepared and able to swear positively upon that point; this ruling being placed on the ground that witness could have known the fact only from statements from Mr. Kline not made in the presence of defendant. Because the court refused to allow plaintiff, while on the witness stand on his own behalf, to testify, as he offered to do, what reason Mr. Kline, as superintendent, assigned for his discharge at the time he was discharged; this ruling being placed upon the ground that the evidence sought was hearsay, because it was a statement made by Mr. Kline not in the presence of the defendant.

(2) Error in refusing to charge the following written request of plaintiff: "The burden of proof put by law upon the defendant, on account of its plea of justification, will not be sustained by its producing evidence short of such evidence as in the opinion of the jury is a preponderance of the evidence in favor of the truth of the charges made; and if mental conviction, based upon a preponderance of the evidence, is not produced, the burden is not satisfied, and the verdict upon that point must be in favor of the plaintiff Anderson.'"

(3) "The burden of proof being upon the defendant to prove its plea of justification, if the jury believe from the evidence that a preponderance of the evidence in favor of the truth of the charges made does not exist, because of the absence of the testimony or evidence of Mr. Kline or any other witness, and that such testimony or evidence could have been procured by the defendant, and was accessible to defendant, and was not produced by the defendant, the jury can draw an inference, in such case, that the evidence or testimony, if it had been taken, would have been unfavorable to the defendant."

(4) "That others may have slandered plaintiff (if such be the fact) is no defense, and cannot lessen the damages to which the plaintiff may otherwise be entitled. So, rumors

to the same effect as those published constitute no excuse for
the publication of them."

1. In the first special assignments of error, relating to
the exclusion of evidence, it does not appear what would
have been the result, had the judge permitted the questions
asked the witness to be answered. It is a rule of law, well
recognized and long established, that he who ' asserts error
in the ruling of the trial judge must prove it; and in order
to prove that the exclusion of the answers of the witness was
error which was prejudicial to the interests of the party who
complains, or such as would authorize the grant of a new
trial, it must appear that the answer, if allowed to be made,
would have stated some relevant fact bearing upon the issue
being tried. It would be no cause for the grant of a new
trial that the court had excluded irrelevant testimony, and
therefore it must be shown that the evidence expected to be
elicited by the answer of the witness would have been rele-
vant. It is not stated in either of these grounds of the motion
what answer was expected to be made by the witness. This
court cannot say that if the question had been answered, the
testimony would have been relevant, and therefore it cannot
say that the court below erred in excluding the answers. To
grant a new trial for the reason assigned in either of these
grounds might, so far as this record discloses, result in direct-
ing another trial, in order that the party complaining might
have the opportunity to offer testimony which was wholly
irrelevant, and ought in the first instance to have been ex-
cluded. We think, therefore, that the court did not err in
refusing a new trial upon either of these grounds.

2. Complaint is made upon the refusal of the court, to give
in charge certain written requests; and in discussing them,
we will examine first the one contained in the second division
supra. If a written request be wanting either in apposite-
ness as applied to the evidence, or fail to state with perfect
accuracy a legal proposition, the court may well decline to
give it in the language requested. The special request un-

der review was inaccurate, in that it invoked an instruction to the effect that the defendant could not be excused on account of its plea of justification, unless it produced such evidence as is, in the opinion of the jury, a preponderance of the evidence in favor of the truth of the charges made. This instruction was not an accurate one. The defendant is required to introduce such evidence only as, when taken in connection with any other evidence that may have been produced by the plaintiff upon the same line, would amount to a preponderance of evidence in its favor; and if a preponderance of the evidence be with it upon the issue of justification, it can make no difference whether that preponderance result from the evidence introduced by it, or from evidence introduced by the plaintiff in the case. The object of all legal investigation being the discovery of truth, the jury, in passing upon the issues of fact, should look to all the evidence; whereas the instruction invoked by this request, if literally accepted by them, would confine their consideration of the evidence upon the plea of justification to that introduced by the defendant alone. It was, therefore, properly refused by the trial judge.

3. The request embodied in the next special assignment of error was subject to the exception, first, of being involved. It is difficult to understand exactly what is meant. The judge was requested to charge the jury, that if it "should believe from the evidence that a preponderance of the evidence in favor of the truth of the charges made does not exist, because of the absence of the testimony or evidence of Mr. Kline or any other witness, and that such testimony or evidence could have been procured by the defendant, and was accessible to defendant, and was not produced by the defendant, the jury can draw an inference, in such case, that the evidence or testimony, if it had been taken, would have been unfavorable to the defendant." It is ordinarily true, that the non-production of evidence within the control of a party is a circumstance from which a jury might be au-

thorized to draw inferences unfavorable to such party, but that rule could not have any application to the case stated in the request; for, if the jury had not in fact believed that a preponderance of the evidence in favor of the truth of the charges made did not exist, they would not be authorized to find in favor of the defendant at all, and the mere non-production of testimony which might have tended further to weaken and emasculate its defense, could not have made worse a cause which was then already bad. If the plea of justification failed because of the want of a preponderance of the evidence to support it, the failure could not have been more complete in consequence of the absence of other evidence which would tend to accentuate the failure.

5. In view of the charge actually delivered to the jury, we do not find any error in refusing the request set forth in the last special assignment of error. The defendant admitted the publication of the libel. It sought to justify it by its plea, and sought to sustain its plea of justification by evidence proving as true the facts stated in the alleged libel. Upon that general subject, the trial judge instructed the jury directly and in terms as follows: "Whatever charge the publication does contain the defendant alleges to be true and is bound to prove the truth thereof at this trial, and that is the issue between the parties." Had the jury upon the trial found a verdict at all for the plaintiff, and complaint had been made that the sum allowed was too small, he might well have complained of the trial judge in refusing to charge as he requested, that is to say, "that others may have slandered plaintiff, if such be the fact, is no defense and cannot lessen the damages to which the plaintiff may otherwise be entitled. So rumors to the same effect as those published constitute no excuse for the publication of them." Because, in that view, it might have been fairly inferred that the jury, in estimating the damages, had undertaken to mitigate the extent of the defendant's responsibility because of the prevalence of the rumors to which the request referred; but

where, as in the present case, the issue was made to turn directly upon the truth or falsity of the facts stated in the alleged libel, and the jury found them to be true, the refusal to give the request named could not have been harmful to the plaintiff; for whether rumors were prevalent or not, and whether their prevalence amounted to an excuse or not, could make no difference where the jury found upon a clear-cut issue in favor of the defendant's plea of justification.

5. We have carefully considered the evidence which comes to us certified in the record. It would serve no profitable purpose to discuss it at length here. There was sufficient evidence to sustain the verdict of the jury. There having been no error of law committed upon the trial, and the trial judge having been satisfied with the finding, this court will not control his discretion in refusing a new trial.

*Judgment affirmed. All the Justices concurring.*