*P. H. Rowe,* for defendant.

---

15830. IVESTER *v.* COE, by next friend.

JENKINS, P. J. 1. "Slander, or oral defamation, consists, first, in imputing to another a crime punishable by law," or, among other charges and disparaging words recognized by the statute, it may consist in charging a person of "being guilty of some debasing act which may exclude him from society." Civil Code (1910), § 4433. Words charging a person with illegal sexual intercourse with another impute a crime and are actionable per se. Penal Code, § 372; *Nicholson* v. *Dillard,* 137 *Ga.* 225, 231 (73 S. E. 382); *Richardson* v. *Roberts,* 23 *Ga.* 215, 221 (8).

2. An essential ingredient of an action for libel is malice, express or implied (Civil Code of 1910, § 4428; *State Mut. Life Assn.* v. *Baldwin,* 116 *Ga.* 855 (1), 43 S. E. 262), and it would seem that the same rule should apply where the statement is merely oral and not written or printed (Civil Code, § 4429; *Nelson* v. *Davis,* 9 *Ga. App.* 131, 137, 70 S. E. 599); but where the language used is actionable per se, malice is implied, except where the occasion of the utterance renders it privileged, in which case, while the occasion does not excuse if the accusation is maliciously made (Civil Code, § 4437), the burden is put upon the plaintiff to establish malice. *Lester* v. *Thurmond,* 51 *Ga.* 118; *Hendrix* v. *Daughtry,* 3 *Ga. App.* 481, 482 (60 S. E. 206).

3. Communications which are deemed privileged may be such in an absolute sense (Civil Code, § 4438), or may be only conditionally so. Among the latter are communications made in the performance of a private duty, either legal or moral, and statements made to protect the speaker's own interest in a matter where it is concerned. Civil Code, § 4436 (1, 2, 3). In order to make the defense of privilege complete, the defendant must show, among other things, a proper occasion for the utterance, and that the publication was limited to proper persons. In the instant case the charge by the defendant, impugning the chastity of the plaintiff, whether it consisted of the language alleged in the petition or that set forth in the plea, was admittedly made not only in the presence of the plaintiff's father, but in the presence of some four or five other witnesses, whose presence was then and there procured by the defendant. Consequently, it can not be said that the plea setting up that the communication was privileged was in any wise sustained. *Sheftall* v. *Cen. of Ga. Ry. Co.,* 123 *Ga.* 589 (51 S. E. 646).

4. In a suit for slander, charging the utterance of language which is slanderous per se, where the utterance was not privileged, the defendant may defend by denying that the words were uttered, or he may defend by setting up the truth of the charge in full justification. Civil Code

(1910), § 4435. Where the plea in effect admits the utterance of language the natural and reasonable construction of which imputes a crime, and reiterates the charge, nothing short of proving the truth of the charge as admittedly made will justify a verdict in favor of the defendant. In the absence of such proof, malice is conclusively presumed, but if the defendant should partially and imperfectly establish his charge by the production of evidence strongly tending to establish, though failing to establish the same, the jury may mitigate the damages imposed, on the theory that the defendant, though wrongfully negligent and guilty of legal malice in making the accusation, was not moved therein by the promptings of actual and express malice. In the instant case no exception is taken to any charge relating to the measure of damages or their mitigation, or to failure to comply with a written request to charge on that subject, but complaint is made that the charge as a whole failed to state properly the law of the case, especially with reference to mitigation of damages, and it is contended that the court should have charged without a request "the correct rule for the jury to assess damages, and the correct rule by which the jury could consider the pleadings filed by the defendant and the evidence offered by the defendant on the question of mitigating the damages if the jury believed that the defendant had published the slander alleged." The court gave in charge the language of section 4429 of the Civil Code, and in other instructions gave the defendant the full benefit of the principle of law set forth above as to mitigation of damages.

5. The court did not err in admitting, over the defendant's objection that it was irrelevant and unauthorized by the pleadings, the evidence of the plaintiff to the effect that, one or two weeks before the alleged slander, the defendant unsuccessfully attempted to kiss and to forcibly embrace her. Such evidence was material on the issue as to good faith or malice of the defendant in making the alleged communications to the father in the presence of several witnesses. 17 R. C. L. 167. See also *Adkins* v. *Williams*, 23 *Ga.* 222 (1), 224; 36 C. J. 1246, 1248. This was one of the vital issues in the case under certain portions of the testimony tending to show that the presence of the witnesses and the making of the statements arose from the initiative and acts of the defendant alone.

6. "Talebearers are as bad as talemakers." Every repetition of a slander originated by a third person is a wilful publication of it, rendering the person so repeating it liable to an action, and it is no defense that the speaker did not originate the slander, but heard it from another, even though he in good faith believed it to be true. *Cox* v. *Strickland*, 101 *Ga.* 482 (3), 493 (28 S. E. 655); *Anderson* v. *Savannah Press Pub. Co.*, 100 *Ga.* 454 (28 S. E. 216); *Richardson* v. *Roberts*, 23 *Ga.* 215 (3, 4), 220; *Bennett* v. *Crumpton*, 1 *Ga. App.* 476, 478 (58 S. E. 104); Newell on Slander & Libel (4th ed.), p. 337; Odgers on Libel & Slander, 173. The charge giving in effect this rule was not an erroneous statement as to the law; nor was it unauthorized, as contended, under the pleadings and the evidence, there being testimony from the defendant himself that his nephew, with whom the misconduct was alleged to have occurred, had told the defendant thereof prior to the alleged slander.

7. The court, when defining slander in substantially the language of section 4433 of the Civil Code, did not err in stating, that, in addition to "imputing to another a crime punishable by law," such as "adultery or fornication and adultery," slander might consist also in "charging him with having been guilty of some debasing act which may exclude the party from society." The exception to this language is that "this suit was brought for defamation by spoken words imputing a crime, punishable by law," and that the charge as to a "debasing act" was not authorized by the pleadings and the evidence. Since the evidence warranted the instruction, and since the petition charged that the defendant had spoken words imputing acts of fornication and adultery with another, and referred thereto not only as an imputation of an "offence," but also as "misconduct imputed to her by the said defendant," on account of which the plaintiff's neighbors, citizens, and associates have "withdrawn their confidence and companionship, wholly refusing and still refusing to associate with your petitioner as in the past," and since the acts charged constituted both an "offence" and a "debasing act," this ground is without merit.

8. In two excerpts, to which separate exceptions are taken, the court charged as follows: "Now the question of whether or not it was intentionally done, or whether with malice or without malice, you may consider the pleading filed by the defendant in this case;" and, immediately following, this language: "If the defendant in his plea charged her with an offense, that the plaintiff made improper advances on him, and charges that the advances were immoral, then the burden would be on the defendant to prove those charges; and if he didn't do it, you may consider that on the question of whether or not there was malice and a verdict could not be predicated on damages, but only on the question of malice at the time the language was used, if it was used." The grounds of exception are that these instructions were "not a correct statement of the law," and were misleading to the jury, unauthorized by the "pleadings and the evidence, and placed the burden of proof on the defendant to sustain his plea, while under the law the burden was on the plaintiff to make out her case," and that "the jury would only be authorized to consider the pleadings of defendant on the question of mitigating the damages." While the plea of the defendant denied that he had in terms charged the plaintiff with the offense of fornication, it did set forth that he had seen the plaintiff and the defendant's nephew "go into the woods together at a place near defendant's house under suspicious circumstances, and that this meeting was effected by motions and signs by said parties so that they met together in said woods," and that "the circumstances were very suspicious," that he so informed the plaintiff's father; and, in concluding, the plea referred to its allegations as "in justification." The plea set up also that the communications, so far as thus admitted, were privileged because made in the performance of a legal and moral duty to the plaintiff and her father, and made bona fide with good intent, to protect the parties. However, in another paragraph of the plea, the defendant alleged that the plaintiff, "along about said time and before the filing of this suit, made improper advances on this defendant in an immoral way." There was undisputed testimony from two physicians, offered in behalf of the plaintiff, that she was a virgin. The only

evidence offered to sustain the allegation with reference to a meeting in the woods was that of the defendant himself, and that was vague and indefinite. His evidence with reference to the alleged immoral advances made to himself was as follows: "Regarding the improper proposals she made to me—she hasn't said anything directly to me—there was one time I was getting some pine—had to get some pine splinters below the house, and she come to where I was at, she had no subject at all, but just come out there and she throwed herself in my way and pass by home and have no occasion to stop, and kinder throwed herself in my way. I didn't have anything to do with her." *Held:* Where the words are privileged, the mere fact that a plea of justification is filed is not alone evidence of malice sufficient to go to the jury, but in such a case, where defendant will neither abandon the plea nor give any evidence to support it, obstinately persisting in the charge to the last without any sufficient reason, this alone may be sufficient evidence of malice. "Thus, a plea of justification may, according to the evidence introduced under it, have one of three effects in the action: (1) the plea being established, the action is simply defeated; (2) failure to establish it, connected with failure to show any reasonable or proper cause for filing it, may aggravate the damages; (3) the partial or imperfect establishment of it, or the production of evidence strongly tending to establish it, may mitigate the damages." *Henderson* v. *Fox*, 83 *Ga.* 233 (3), 243 (9 S. E. 839); *Ransone* v. *Christian*, 49 *Ga.* 491 (4); *Henderson* v. *Fox*, 80 *Ga.* 479 (3), 482 (6 S. E. 164). The instructions excepted to were fully as favorable to the rights of the defendant as the evidence offered in support of his plea warranted. *Judgment affirmed. Stephens and Bell, JJ., concur.*

DECIDED APRIL 10, 1925.

Action for slander; from Stephens superior court—Judge J. B. Jones. July 7, 1924.

Leonora Coe, by her next friend, sued J. C. Ivester for slander, and in her petition as amended alleged, that she was a virgin and pure in character, and that the defendant, on April 23, 1922, spoke to and in the presence of E. E. Coe, Reuben Ivester, and other persons named, the following false and scandalous words concerning her character: "I have seen Leonora and Reuben Ivester meet in the woods at different times·alone," and other words set out, to the same effect; and "I can prove the very act by different ones in the past, and Leonora is big now" (meaning that she was pregnant with a bastard child, the foregoing assertions meaning that she was going to the woods for immoral purposes and committing fornication and adultery with Reuben Ivester); and that by reason of the speaking of these malicious and defamatory words she was greatly injured in her good name and reputation, etc.

The defendant in his answer denied these allegations, and further

pleaded in substance as follows: Defendant's nephew, Reuben Ivester, was living in defendant's house with him and working on his farm for him, about February 20, 1922, and before and after that time he saw the plaintiff and Reuben Ivester go into the woods together at a place near defendant's house under suspicious circumstances, and this meeting was effected by motions and signs by them. Defendant went in good faith to E. E. Coe, the plaintiff's father, and communicated to him this information, and remonstrated with Reuben about the matter and tried to get him to keep away from Leonora and go on with his work for defendant and not get into any trouble. Defendant did not see Reuben and Leonora in the act of adultery or fornication, and did not charge adultery or fornication upon them, but the circumstances were very suspicious, and he bona fide and with good intent and to protect the said persons from shame, and to protect his own interest in a matter in which he was concerned, informed the plaintiff's father of said conduct, as he felt that to do this was his duty, both legal and moral, that the father might save his daughter from trouble, shame, and disgrace, and that Reuben might be corrected and kept at his work, and therefore the said communication was privileged under the law. The defendant further averred: "Plaintiff Leonora Coe along about said time was a young girl 16 or 17 years old, and was stating to her associates that she and defendant were soon to be married, which was not true, and Leonora, along about said time and before the filing of this suit, made improper advances on this defendant in an immoral way. Defendant never at any time gave Leonora Coe any grounds or reason to believe that he would marry her. And therefore defendant pleads this in justification and as a privileged communication as allowed by law."

The trial of the case resulted in a verdict against the defendant for $2,000. The case came to this court on exceptions to the overruling of his motion for a new trial. The grounds of the motion are sufficiently indicated in the foregoing decision.

*Fermor Barrett, J. J. & Sam Kimzey,* for plaintiff in error.

*John C. Bell, T. G. Dorough,* contra.