### 60768. RUCKER et al. v. GANDY.

SOGNIER, Judge.

Gandy was a warrant officer in the U. S. Army, assigned to the Finance Office at Fort Benning. In November, 1973 Lieutenant Colonel (LTC) Wadsworth (Finance Officer) changed a military position in the Finance Office to a federal civil service position in the grade of GS-9. The names of two civil service employees at Fort Benning were submitted to LTC Wadsworth by the civilian personnel office as "best qualified" for the position when it was advertised. LTC Wadsworth rejected these two applicants.

Three months after the position was changed from a military to a civilian position (February, 1974), Gandy retired. He had taken a federal civil service examination prior to retirement and his name was placed on the federal civil service register in Macon. When no persons acceptable to LTC Wadsworth were found at Fort Benning, the vacancy was advertised army-wide. In response to this advertisement, Gandy's name was submitted by the Macon office; his was the only name submitted and LTC Wadsworth selected Gandy for the job in March, 1974. However, as Gandy had been retired for less than six months, the Dual Compensation Act (78 Stat. 484, 5 USC § 62) prohibited his employment in the federal civil service within 180 days after retirement without a waiver from the Department of the Army. Gandy's application for such a waiver was denied, and he was never thereafter employed at Fort Benning.

Gandy filed the instant action alleging that the individual defendants (each a union representative or union official), the defendant American Federation of Government Employees (AFGE)

and Local 54 of AFGE conspired to deprive him of federal employment; to impair his reputation among prospective government employers; and to subject him to embarrassment and scorn.

1. In regard to libel, Gandy relies on letters written by the president of the local union at Fort Benning to other union officials, to Senator Herman Talmadge, to Congressman Jack T. Brinkley, and a letter from the national vice president of the AFGE Fifth District to the Commanding General at Fort Benning. However, none of the letters contain any statements which could be considered libelous of Mr. Gandy, and the letters to Senator Talmadge and Congressman Brinkley do not relate to Gandy; rather, they relate to a totally unrelated complaint of another civil service employee. Further, there is no evidence that anything the defendants said or wrote caused Gandy to be deprived of a job at Fort Benning or elsewhere in federal civil service. On the contrary, he was deprived of his job at Fort Benning by Department of the Army (Army headquarters in Washington, D. C.), who denied Gandy's request for a waiver of the 180 day waiting period after his retirement. The request was denied because "management" at Fort Benning had not proven beyond a reasonable doubt that it had not given undue preference to Gandy, as required by the Dual Compensation Act, supra. In the same letter to officials at Fort Benning, Department of the Army prohibited Gandy's future appointment to a position at Fort Benning without prior approval from the Department of the Army. There is no indication that the information forming the basis of Department of the Army's decision in this matter came from any defendant in the case.

Even assuming, without deciding, that the statements were libelous per se, Code Ann. § 105-709 (2) provides that statements made in the performance of a private duty, either legal or moral, are deemed privileged communications. The statements in the instant case were made by union officials who believed inequities were occurring in employment practices at Fort Benning, and were based on complaints and other information received by such officials. As union officials, we believe the individual defendants had a duty to report such alleged inequities to military authorities and senior union officials so such inequities could be investigated and corrected, if necessary. Under such circumstances the communications were privileged. Code Ann. § 105-709 (2), supra; *Fisher v. J. C. Penney,* 135 Ga. App. 913, 914 (2) (219 SE2d 626) (1975). Privilege is a defense to printed or spoken defamation, and lack of malice in cases of privileged communications will bar recovery. Code Ann. § 105-706; Conklin v. Augusta Chronicle Pub. Co., 276 F. 288, 290 (3) (1921);

*Rogers v. Adams,* 98 Ga. App. 155, 158 (2) (105 SE2d 364) (1958).

Having reached the conclusion that the statements in this case were privileged, we must next determine if there was a lack of malice in making the statements. An examination of the transcript discloses no evidence to support an allegation that the statements involved in this case were made maliciously, or with any intent to harm Gandy. As stated previously, the statements were made as a result of complaints received by union officials regarding alleged unfair employment practices at Fort Benning. The fact that the letters to Senator Talmadge and Congressman Brinkley involved a different complaint, together with the fact that the letter from a union official to the Commanding General referred to six instances of alleged inequities and did not single out Gandy, indicates that the union's only concern was to correct inequities; there is nothing to indicate malice, or that union officials were acting maliciously toward Gandy. Hence, recovery is barred, since the statements were privileged and malice is lacking.

2. In regard to the alleged slanderous words spoken by the individual defendants in this case, we again note that such words were not slanderous per se. In fact, stating that the finance office set up a position for Gandy on his retirement, if slanderous, would not slander Gandy; it would slander the persons taking such action. Further, stating that Gandy wrote the job description for the newly created position is not slanderous; it would be normal for a person who is the head of a section to write a description for a job in his section, setting forth the requirements for the job. Further, the truth of the charge may always be proved in justification of the libel or slander. Code Ann. § 105-706; *Ivester v. Coe,* 33 Ga. App. 620 (4) (127 SE 790) (1925); *Savannah News-Press v. Hartridge,* 110 Ga. App. 203, 206 (138 SE2d 173) (1964).

Without detailing all the evidence in this case, we note that Department of the Army found that Fort Benning failed to prove Gandy had not been given undue preference, and a U. S. Department of Labor administrative law judge found that Gandy denied Rucker promotions because of her union activities and had stated he (Gandy) disliked unions; such evidence indicates the truth of the statements made by the defendants. Again assuming, for the purpose of argument only, that the statements were slanderous, the defendants would have the burden of either proving the truth of the statements, or that the statements were privileged. *Adams v. Greeson,* 16 Ga. App. 649 (3) (85 SE 936) (1915). In the instant case, as there is nothing in the record indicating deliberate falsehood or malice on the part of any defendant, and as we find the statements communicated were privileged, the trial court erred in denying appellants' motion for a

directed verdict. See *Spaulding v. Rich's, Inc.,* 146 Ga. App. 693, 694 (247 SE2d 218) (1978).

*Judgment reversed. Deen, P. J., and Birdsong, J., concur.*

DECIDED MARCH 6, 1981 — REHEARING DENIED MARCH 23, 1981.

*Robert C. D. McDonald, H. Norwood Pearce,* for appellants.
*Michael Agnew,* for appellee.