S97G1969. ZIELINSKI v. CLOROX COMPANY et al.
(504 SE2d 683)

SEARS, Justice.

We granted certiorari in this case to consider whether the Court of Appeals correctly held that OCGA § 51-5-7, which provides that in defamation actions certain communications are deemed privileged, can be used as an evidentiary privilege to prevent admission of a party's statements into evidence for impeachment purposes.[1] We conclude that the Court of Appeals erred in so holding. Further, we reject the appellees' contention that the conversation in question was protected by the attorney-client privilege. Accordingly, we reverse the judgment of the Court of Appeals.

The appellant, Gary Zielinski, sued his former employer, the Clorox Company, as well as one of his plant supervisors, William

---

[1] *Zielinski v. Clorox Co.*, 227 Ga. App. 760 (490 SE2d 448) (1997).

Castleberry, for invasion of privacy, alleging that at a meeting of all plant employees Castleberry had implicated Zielinski in an embezzlement scheme that had been discovered at the plant. Zielinski also sued Castleberry for tortious interference with employment after Castleberry recommended that Clorox terminate Zielinski's employment.

At trial, Zielinski attempted to impeach Castleberry's testimony with the transcript of a meeting which was held on July 30, 1990, before the date of the all-plant meeting. Castleberry objected, however, contending that he had an attorney-client privilege with respect to the communications made at that meeting. Castleberry's counsel explained to the trial court that his law firm, which was representing both Castleberry and Clorox in this action, also served as Clorox's corporate counsel at the July 30 meeting. Castleberry's counsel stated that, at some point before the July 30 meeting, his law firm was retained by Clorox to advise the company on the course of its investigation into the embezzlement scheme at the plant. He added that on July 30, Castleberry and several other Clorox employees, including the company auditor, met with an attorney from the firm to discuss how to handle the investigation. He also informed the court that the meeting had been recorded and that a transcript of the meeting had been made. Although counsel acknowledged that a copy of the transcript of the meeting had been provided voluntarily to the local district attorney by Clorox, he contended that the communications evidenced by the transcript were privileged as to Castleberry, and that the dissemination of the transcript by Clorox could not act as a waiver of Castleberry's privilege.

The trial court ruled that Castleberry had an attorney-client privilege with regard to the communications made at the July 30 meeting, that Clorox had not waived Castleberry's privilege by providing a copy of the transcript to the district attorney, and that Zielinski could not use the transcript of the meeting to attempt to impeach Castleberry. The trial court subsequently directed verdicts in favor of Castleberry on Zielinski's tortious interference claim and in favor of Clorox on Zielinski's invasion of privacy claim. The trial court submitted Zielinski's invasion of privacy claim against Castleberry to the jury, but the jury found in favor of Castleberry.

On appeal, the Court of Appeals reversed both the directed verdict and jury verdict in favor of Castleberry, but affirmed the directed verdict in favor of Clorox. The Court also ruled against Zielinski's contention that the trial court erred in refusing to permit him to use the transcript of the July 30 meeting to impeach Castleberry. In doing so, the Court of Appeals did not rely on the attorney-client privilege, but instead held that the communications at that meeting were privileged under OCGA § 51-5-7, and that the trial court there-

fore properly precluded Zielinski from using the transcript of the meeting at trial. We granted certiorari to consider the latter issue, and for the reasons that follow, we reverse.

1. OCGA § 51-5-7 provides, in relevant part, that "communications are deemed privileged" when "made in good faith in the performance of a legal or moral private duty." We agree with Zielinski that the provisions of § 51-5-7, which are part of our tort statutes relating to defamation, create a defense to an action for libel or slander, and do not create evidentiary privileges, such as the attorney-client privilege. First, by its very terms, § 51-5-7 is designed to create a privilege, and therefore a defense,[2] regarding communications that the defendant has already disseminated and that are the subject of the defamation action. In addition, the question whether a communication is privileged so as to constitute a defense in a defamation action is generally a question of fact for a jury.[3] In contrast, the purpose of an evidentiary privilege is to preclude the dissemination of the communication and to preclude a trier of fact from hearing otherwise relevant evidence.[4] We thus conclude that the Court of Appeals erred in relying on § 51-5-7 to rule that the trial court correctly precluded Zielinski from introducing into evidence the statements that Castleberry allegedly made at the July 30 meeting.

2. Moreover, we conclude that Castleberry's statements were not protected by the attorney-client privilege.

Assuming that a corporate attorney-client privilege exists with regard to the communications that occurred at the meeting, it is clear that the corporation waived its privilege by forwarding the transcript of the meeting to the district attorney's office.[5] Moreover, the corporate attorney-client privilege belongs to the corporation, not to an officer or employee of the corporation, and an officer or employee therefore has no power to assert the corporation's privilege or to prohibit the corporation from waiving it.[6] For these reasons, and because the party asserting the attorney-client privilege has the burden to establish its applicability,[7] Castleberry had to establish a personal

---

[2] See *Rucker v. Gandy*, 158 Ga. App. 104, 105 (279 SE2d 259) (1981) ("Privilege is a defense to printed or spoken defamation, and lack of malice in cases of privileged communications will bar recovery."); *Baskin v. Rogers*, 229 Ga. App. 250, 253 (493 SE2d 728) (1997).

[3] *Baskin v. Rogers*, 229 Ga. App. at 253; *Kennedy v. Johnson*, 205 Ga. App. 220, 223 (421 SE2d 746) (1992); *Southern Bus. Machines v. Norwest Fin. Leasing*, 194 Ga. App. 253, 260 (390 SE2d 402) (1990).

[4] See Agnor's Georgia Evidence, § 6-1 (3d ed. 1993).

[5] *Mikart, Inc. v. Marquez*, 211 Ga. App. 209, 211 (2) (438 SE2d 633) (1993).

[6] *In re Grand Jury Subpoenas*, 144 F3d 653, 658 (10th Cir. 1998); *United States v. International Brotherhood of Teamsters*, 119 F3d 210, 215 (2nd Cir. 1997); *In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F2d 120, 124 (3rd Cir. 1986).

[7] See *Southern Guaranty Ins. Co. v. Ash*, 192 Ga. App. 24, 29 (383 SE2d 579) (1989); *General Motors Corp. v. Conkle*, 226 Ga. App. 34, 46 (486 SE2d 180) (1997); *In re Grand Jury*

attorney-client privilege with regard to the communications made at the July 30 meeting to preclude Zielinski from using the transcript of that meeting at trial. For the following reasons, we conclude that he did not.

Although the courts of this State have not fashioned a test for determining when a corporate employee may establish an individual attorney-client privilege with respect to communications the employee has had with corporate counsel, federal courts have fashioned a test that we find meritorious. Under the test, corporate employees may assert a personal privilege with respect to conversations with corporate counsel if the employees satisfy the following conditions:

> First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And, fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company.[8]

We conclude that Castleberry failed to establish the existence of a personal privilege under the foregoing test. Castleberry never testified that he approached the law firm to seek legal advice in his individual capacity, and Castleberry's counsel stated that the firm had been hired by Clorox and that the purpose of the investigation was to assist Clorox in handling its investigation of the embezzlement scheme. Further, if Castleberry was seeking legal advice from corporate counsel in his individual capacity at the July 30 meeting, he failed to maintain the confidentiality of his communications when he sought advice in the presence of several other employees. Finally, according to counsel's statements to the court, Castleberry's communications with the attorney concerned the affairs of Clorox in investigating the embezzlement scheme at its plant. For these reasons, we conclude that Castleberry failed to establish the applicability of a

---

*Subpoenas*, 144 F3d at 658.

[8] *International Brotherhood of Teamsters*, 119 F3d at 215 (quoting *Bevill*, 805 F2d at 125). Accord *In re Grand Jury Subpoenas*, 144 F3d at 659; *In re Grand Jury Investigations*, 575 FSupp. 777, 780 (N. D. Ga. 1983).

personal attorney-client privilege.[9]

Accordingly, we reverse the Court of Appeals' holding that the trial court properly precluded Zielinski from using the transcript of the July 30 meeting to impeach Castleberry.

*Judgment reversed. All the Justices concur.*

DECIDED SEPTEMBER 21, 1998 —
RECONSIDERATION DENIED OCTOBER 26, 1998.

*Vincent R. Lauria, Bondurant, Mixson & Elmore, M. Jerome Elmore, Frank M. Lowrey IV,* for appellant.

*Arrington & Hollowell, Gary W. Diamond, Joni C. Hamilton, Mark W. Wortham,* for appellees.

---

[9] Moreover, contrary to Castleberry's contention, the absence of the transcript of the July 30 meeting from the record does not preclude this Court from determining that Castleberry failed to establish the existence of a personal attorney-client relationship.