T.C. Memo. 2004-259

UNITED STATES TAX COURT

BARRY E. MOORE AND DEBORAH E. MOORE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11002-03.                Filed November 15, 2004.

<u>Vivian D. Hoard</u> and <u>Patti M. Richards</u>, for petitioners.

<u>Michael L. Scheier</u> and <u>Jennifer J. Morales</u>, for affected

person United Surgical Partners International, Inc.

<u>Brenda M. Fitzgerald</u>, for respondent.

MEMORANDUM OPINION

HALPERN, <u>Judge</u>:  By notice of deficiency dated April 10,
2003, respondent determined deficiencies in petitioners' Federal
income taxes for 1999 and 2000 in the amounts of $96,925 and
$78,578, respectively.  Petitioners assign error to respondent's

determinations, and among the issues we must decide is petitioner Deborah E. Moore's (Moore's) membership interest during the years in issue in the Surgery Center of Georgia, LLC (Surgery Center), a Georgia limited liability company. In support of their claim that, prior to 2000, Moore's interest in Surgery Center did not exceed 2 percent, petitioners offer two exhibits (collectively, the exhibits), marked by the Court as Exhibits 103-P and 104-P, and the anticipated testimony of attorney James P. Kelly (Kelly), evidenced by his affidavit (the Kelly affidavit), dated June 14, 2004. Both the exhibits and the Kelly affidavit have been placed under seal. We must resolve a claim of privilege raised by United Surgical Partners International, Inc., a Delaware Corporation (International), on behalf of Surgery Center, now a subsidiary of International's, with respect to the exhibits and the anticipated testimony of Kelly.

## Background

By order dated May 20, 2004 (the order), we set forth the procedures for International to follow in raising any claim of privilege. Pursuant to the order and Rule 103, Tax Court Rules of Practice and Procedure, International (an affected person, within the meaning of the Rule) moves (the motion) that the Court enter a protective order shielding Surgery Center from intrusion upon privileged communications between Surgery Center and Kelly, Surgery Center's counsel. Specifically, International asks the

Court to prohibit: (1) the admission of the exhibits, which it claims contain privileged communications between Kelly and Surgery Center; (2) the anticipated testimony of Kelly (as evidenced by the Kelly affidavit) regarding privileged communications between him and Surgery Center, including any testimony concerning the contents of the exhibits; and (3) all other testimony or written material containing matters protected by the attorney-client privilege or work product doctrine.

In support of the motion, International argues that, as the parent company of Surgery Center, it is asserting on behalf of Surgery Center's present management (New Management) Surgery Center's attorney-client privilege, which, with respect to the information International asks be protected, New Management does not now waive (nor has it ever waived). International further argues that there is no evidence that any predecessor holder of Surgery Center's privilege waived that privilege with respect to such information. International supports the motion with a memorandum of law, an affidavit of Jason B. Cagle (the Cagle affidavit), general counsel for International, and a second memorandum of law (the reply memorandum), which is in response to petitioners' reply to the motion (the reply).

By the reply, petitioners object to the motion. Petitioners identify four issues: (1) whether evidence of ownership interests in a limited liability company is subject to the attorney-client

privilege; (2) whether, as between partners in a joint venture, the attorney-client privilege attaches to advice to those partners; (3) whether, prior to the trial of this case, Surgery Center waived the privilege; and (4) whether Dr. Joffe, at one time majority owner of Surgery Center and its manager, by his testimony in this case, impliedly waived the privilege.

Respondent has taken no position on the claim of privilege and retains his right to object to the exhibits and any testimony of Kelly.

The Court has made an in camera inspection of the exhibits and Kelly affidavit.

### Discussion

To dispose of the motion, we must answer the following questions: (1) Would admission of the exhibits and the Kelly testimony disclose a privileged communication between client and attorney; (2) assuming it would, who has held, and who now holds, the privilege; and (3) has the privilege been waived?

### Attorney-Client Privilege

In Bernardo v. Commissioner, 104 T.C. 677, 682 (1995), we provided the following pertinent summary:

> The attorney-client privilege "applies to communications made in confidence by a client to an attorney for the purpose of obtaining legal advice, and also to confidential communications made by the attorney to the client if such communications contain legal advice or reveal confidential information on

which the client seeks advice."  Hartz Mountain Indus.
v. Commissioner, 93 T.C. 521, 525 (1989) (citing Upjohn
Co. v. United States, 449 U.S. 383, 389 (1981)).

Disclosure of a privileged communication may
result in a waiver of the attorney-client privilege.
Id.  The party asserting the attorney-client privilege
must prove that it has not waived the privilege.  Id.
* * *

Would admission of the exhibits and the Kelly testimony disclose
a privileged communication between client and attorney?

We have examined the exhibits and have no doubt that they

disclose communications to an attorney (Kelly) for the purpose of

obtaining legal advice.  That is apparent from the face of the

exhibits (each of which is a letter from Kelly) and is not

seriously challenged by petitioners.  While nothing in the Cagle

affidavit declares that those communications were made in

confidence, Exhibit 103-P carries the legend: "Confidential[,]

Attorney-Client Communication"; and Exhibit 104-P carries the

legend: "Confidential[,] Attorney/Client Privilege".  We think it

a fair inference, and we find, that the communications underlying

each letter, and the letters themselves, were intended to be in

confidence.

Nevertheless, petitioners claim that the exhibits contain

references to Kelly's understanding, as of the dates of the

exhibits, of the various ownership interests (percentages) in

Surgery Center.  Petitioners argue:  "The [attorney-client]

privilege simply does not apply to routine business transactions

disclosed to outsiders or business records necessary for the

preparation of the tax return."  It is true that communications to an attorney not both in confidence and for the purpose of obtaining legal advice are not protected by the attorney-client privilege.  See, e.g., In re Grand Jury Investigation, 842 F.2d 1223, 1224 (11th Cir. 1987) ("Courts generally have held that the preparation of tax returns does not constitute legal advice within the scope of that privilege.").  Nevertheless, if a client expects that his communication to an attorney for the purpose of obtaining legal advice will remain confidential, the privilege not to have that communication disclosed applies notwithstanding that the communication contains nonconfidential information. Professor Paul R. Rice, in his treatise, Attorney-Client Privilege in the United States, describes the general rule as follows:

> The communication from the client to the attorney may contain nonconfidential information such as business information, public or technical information, or pre-existing documents that were not created for the purpose of communicating with the attorney.  This is not relevant to the point of whether confidentiality can reasonably be expected in the communications that contain the information.

Rice, Attorney-Client Privilege in the United States, sec. 6:2, at 9-11 (2d ed. 1999).  See, e.g., Natta v. Zletz, 418 F.2d 633, 637 (7th Cir. 1969) ("It is also immaterial that some of them [letters] refer to technical or public information."); Cuno, Inc. v. Pall Corp., 121 F.R.D. 198, 202 (E.D.N.Y. 1988) ("The fact that the submissions exclusively contain technical data is not

controlling."); Byrnes v. IDS Realty Trust, 85 F.R.D. 679, 683 (S.D.N.Y. 1980) ("[T]hat the [technical] information in these documents was not necessarily confidential [,] 'that is, known only to the client'[,] does not defeat the privilege as long as the communication is made in confidence.").

Admission of the exhibits and of any testimony of Kelly regarding the contents of the exhibits would disclose a privileged communication between client and attorney. Given the existence of privileged communications, who has held, and who now holds, the privilege?

From the Kelly affidavit, we conclude that, with respect to the legal advice contained in the exhibits, Kelly believed his client to be Surgery Center, and only Surgery Center, and we find that his client was Surgery Center. As stated, Surgery Center is a Georgia limited liability company, and a member of a Georgia limited liability company is considered a person separate from the company. Yukon Partners, Inc. v. Lodge Keeper Group, Inc., 572 S.E.2d 647, 651 (Ga. Ct. App. 2002).

International admits that Georgia courts have not addressed whether an attorney who represents a limited liability company also represents the individual members of the company. International argues, however, that Georgia law largely is in accord with Federal law on the question of who holds, and hence has the power to assert or waive, a corporation's attorney-client privilege. Compare Zielinski v. Clorox Co., 504 S.E.2d 683, 685

(Ga. 1998) ("the corporate attorney-client privilege belongs to the corporation, not to an officer or employee of the corporation") with Commodity Futures Trading Commn. v. Weintraub, 471 U.S. 343, 348-349 (1985) ("for solvent corporations, the power to waive the corporate attorney-client privilege rests with the corporation's management").  By analogy to a corporation, International argues that, when a limited liability company makes a confidential communication to an attorney for the purpose of obtaining legal advice, the privilege to prohibit disclosure of that communication belongs to the company and not to its members.  By further analogy to the corporate situation, International argues that only management has the authority to assert that privilege.  See Commodity Futures Trading Commn. v. Weintraub, supra (management's power to waive solvent corporation's attorney-client privilege is normally exercised by its officers and directors).

The Georgia Limited Liability Company Act allows management of the business and affairs of a limited liability company to be vested in one or more managers, to the exclusion of the members.  See Ga. Code Ann. sec. 14-11-304 (2003).  We have in evidence the operating agreement of Surgery Center (the operating agreement).  The operating agreement vests management of the company in a single manager [Manager], who, to the exclusion of the members, is given the power and authority on behalf of the company "to do

and perform all acts as may be necessary or appropriate to the conduct of the Company's business as permitted [by law]." Specifically, the Manager "shall have exclusive, full and complete authority, power and discretion to manage and control the business, affairs and Properties of the Company, to make all decisions regarding those matters and to perform any and all acts or activities customary or incident to the management of the Company's business." Accordingly, we believe that the Manager has exclusive authority to assert, or waive, the attorney-client privilege on behalf of Surgery Center. International argues that, as evidenced by Waiver of Notice and Right to Purchase, attached to Exhibit 65-J, Assignment and Assumption Agreement, and a document styled "Resignation", dated July 28, 2000, and attached as Exhibit C to the reply memorandum, Dr. Joffe was Manager of Surgery Center in 1997, when Kelly authored the exhibits, and continuing through July 28, 2000 (the date of his resignation as manager). Petitioners make no argument to the contrary, and we so find.

International argues that, at present, on account of the passage of control of Surgery Center to International, the authority to assert or waive Surgery Center's attorney-client privilege rests with New Management, the Manager of Surgery Center installed by International. See Ramada Franchise Sys., Inc. v. Hotel of Gainesville Associates, 988 F. Supp. 1460, 1463

(N.D. Ga. 1997) (stating: "The authority to assert and waive the corporation's attorney-client privilege follows the passage of control of the corporation." (citing <u>Commodity Futures Trading Commn. v. Weintraub</u>, <u>supra</u> at 349)). As we understand petitioners' response to that argument, it is that the cited caselaw does not apply because the "client" communicating with the attorney here was not Surgery Center but was, collectively, its members (i.e., its "partners", including Moore). We have already found that Kelly's client was Surgery Center and concluded that, in Georgia, a member of a limited liability company is considered a person separate from the company. We have also found that management of the company was out of the hands of the members. As a member of Surgery Center, in light of the facts before us, Moore enjoys no privilege (nor may she waive any privilege) with respect to privileged communications between Surgery Center and Kelly, its attorney. We conclude that, at the present time, the authority to assert or waive Surgery Center's attorney-client privilege rests with New Management.

<u>Has the privilege been waived</u>?

Petitioners argue that any privilege Surgery Center may have enjoyed with respect to the exhibits has been waived by Surgery Center's own actions. Among those actions, petitioners list Moore's receipt of the exhibits, the communication of the "gist" of the exhibits to Surgery Center's accountants (and from them to

respondent's agents during an examination of Surgery Center's tax returns for 1999 and 2000), and the "dissemination" of the exhibits to respondent. International responds:

> "Even if true, not one of these alleged disclosures operates as a waiver of the attorney-client privilege attaching to Mr. Kelly's letters. The reason is simple: the privilege belonged at all times to SCG [Surgery Center]. Consequently, only the entity (through the Manager) has the power to effect a waiver. The actions of SCG's tax matters partner and accountants could not waive SCG's privilege.
>
> As Professor Rice expresses the general rule:
>
> Waiver of the attorney-client privilege can be either express or implied. Express waivers are less common. More often than not, waivers must be found by implication from client conduct that is inconsistent with any reasonable claim of confidentiality and that would make maintenance of the privilege unfair. * * *

Rice, Attorney-Client Privilege in the United States, sec. 9:22, at 56-57 (2d ed. 1999) (footnotes omitted); see, e.g., Hanson v. AID, 372 F.3d 286, 293-294 (4th Cir. 2004) ("A client can waive an attorney-client privilege expressly or through his own conduct. Implied waiver occurs when a party claiming the privilege has voluntarily disclosed confidential information on a given subject matter to a party not covered by the privilege." (Citation omitted.)). Moreover:

> Regardless of whether the client intended to waive the attorney-client privilege protection by his conduct, the client's failure to take reasonable precautions to preserve the confidentiality of attorney-client communications can result in the destruction of their privileged protection. * * *

Rice, Attorney-Client Privilege in the United States, sec. 9:23, at 58-59; see, e.g., Gomez v. Vernon, 255 F.3d 1118, 1131-1132 (9th Cir. 2001) ("[W]hen there has been an involuntary disclosure, the privilege will be 'preserved if the privilege holder has made efforts "reasonably designed" to protect the privilege. * * * Conversely * * * the privilege [will be deemed] to be waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter.'").

Although we have found that the exhibits were confidential communications, the confidentiality of the exhibits has been breached. Respondent attached copies of the exhibits to his motion to compel production of documents, reciting that, among other documents, the exhibits were provided to respondent by Moore (apparently during the discovery phase of this case). Although petitioners have failed in their promise made at trial to produce affidavits from Surgery Center's accountants that they (the accountants) had received copies of the exhibits from Surgery Center for tax return preparation purposes, petitioners have attached to the reply copies of Internal Revenue Forms 5701 and 886-A, both dated November 11, 2002. Those forms discuss proposed adjustments with respect to Surgery Center's Federal income tax returns for 1999 and 2000. They state that the "taxpayer's representative" has stated that certain contemplated

transfers of stock were not completed because of the advice of attorneys that the contemplated transfers violated "the Stark laws relating to physicians and the amount of interest they may own in a hospital." Although that is not an accurate description of the exhibits, we think it a fair inference that the attorney advice being referred to is that contained in the exhibits. International had the opportunity to challenge that inference in its reply memorandum, but failed to do so, which we think equivalent to an admission that that inference is fair.

"[A]t the point where attorney-client communications are no longer confidential, i.e., where there has been a disclosure of a privileged communication, there is no justification for retaining the privilege." United States v. Suarez, 820 F.2d 1158, 1160 (11th Cir. 1987). As Professor Rice generalizes the rule: "The voluntary disclosure of privileged communications to third parties (who are not agents of either the attorney or the client) by the client or the client's authorized agent destroys both the communications' confidentiality and the privilege that is premised upon it." Rice, Attorney-Client Privilege in the United States, sec. 9:27, at 70-71 (2d ed. 1999) (footnotes omitted). Indeed: "[D]isclosure of any significant portion of a confidential communication waives the privilege as to the whole." United States v. Davis, 636 F.2d 1028, 1044 (5th Cir. 1981). An attorney or other agent of the client may possess the implied

authority to waive the attorney-client privilege on behalf of his client. See, e.g., <u>In re Von Bulow</u>, 828 F.2d 94, 101 (2d Cir. 1987). We believe that, during the course of the Internal Revenue Service's (IRS's) examination of Surgery Center's income tax returns for 1999 and 2000, Surgery Center's representative disclosed some or all of the contents of the exhibits to the IRS. Although we have virtually no information concerning the scope of that representative's authority to represent Surgery Center, we have no reason to believe that he (or she) exceeded the scope of that authority. We, thus, conclude that he had the authority, explicit or implicit, to disclose to the IRS the contents of the exhibits. Since the IRS is a third party (that is neither an agent or attorney of Surgery Center's), such disclosure destroyed the confidentiality of the exhibits and ended the privilege premised on such confidentiality.

Alternatively, if the confidentiality of the exhibits had not been destroyed previously, Moore's disclosure of the exhibits to respondent during the discovery phase of this case caused such destruction and ended the privilege. It may be that the disclosure was not voluntarily made by Surgery Center, if Moore had no authority to make that disclosure. Nevertheless, Moore's ready access to the exhibits (Dr. Joffe described her position as "equivalent of the president or chief operating officer of the facility [Surgery Center] in terms of the day to day running")

raises the question of whether Surgery Center took reasonable precautions to preserve their confidentiality. The failure to take precautions to preserve the confidentiality of privileged material can result in the destruction of the material's privilege protection. Rice, Attorney-Client Privilege in the United States, sec. 9:23, at 58-59 (2d ed. 1999); see, e.g., In re Horowitz, 482 F.2d 72, 82 (2d Cir. 1973) ("It is not asking too much to insist that if a client wishes to preserve the privilege * * *, he must take some affirmative action to preserve confidentiality."). "When employees leave the client's employment, the client must take reasonable steps to ensure that they do not retain the confidential communications to which they were given access while employed." Rice, Attorney-Client Privilege in the United States, sec. 9:23, at 61 (2d ed. 1999); see, e.g., Bowles v. Natl. Association of Home Builders, 2004 U.S. Dist. LEXIS 19622, *32-*36, 2004 WL 2203831, *10-*11 (D.D.C. 2004) (holding that defendant-corporation had waived any attorney-client privilege to documents retained by plaintiff, a former executive of a subsidiary, because, among other things, defendant had failed to take reasonable measures to preserve confidentiality even before plaintiff left subsidiary's employ with documents); IMC Chems. v. Niro, Inc., 2000 WL 1466495, *27 (D. Kan. 2000) (declining to uphold attorney-client privilege given "limited, if any, precautions taken by plaintiff to assure

the confidentiality of the documents kept by [a former consultant to the plaintiff]"); Apex Mun. Fund v. N-Group Sec., 841 F. Supp. 1423, 1433 (S.D. Tex. 1993) (refusing to recognize attorney-client privilege over documents that the party asserting the privilege had effectively abandoned to a former employee). International has made no showing of any precautions taken to maintain the confidentiality of the exhibits, either generally or with respect to departing employees, such as Moore. Indeed, Dr. Joffe was Manager of Surgery Center in 1997, when Kelly authored the exhibits, and continuing through July 28, 2000. He was available to testify or provide an affidavit as to precautions taken to insure the confidentiality of the exhibits, but he did not do so. We think that a fair inference to be drawn from International's failure to call Dr. Joffe or provide his affidavit is that his testimony or declaration would have been negative to International. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946) ("the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable"), affd. 162 F.2d 513 (10th Cir. 1947); see also United States v. Tory, 52 F.3d 207, 211 (9th Cir. 1995) (similar). We therefore find that Surgery Center failed to preserve the confidentiality of the exhibits, with the result that Moore's disclosure of the exhibits destroyed the

confidentiality of the exhibits and ended the privilege premised on such confidentiality.

<u>Conclusion</u>

Relying on its claim of attorney-client privilege, International has asked the Court to prohibit: (1) the admission of the exhibits; (2) the anticipated testimony of Kelly regarding privileged communications between him and Surgery Center; and (3) "all other testimony or written material containing matters protected by the attorney-client privilege or work product doctrine."

Since disclosure of the exhibits destroyed the confidentiality of the exhibits and ended the privilege premised on such confidentiality, we shall deny the motion with respect to admission of the exhibits. We shall likewise deny the motion with respect to any testimony of Kelly concerning communications made to him by Surgery Center and in response to which he authored the exhibits. In all other respects, we shall deny the motion since there has been no showing that petitioners wish to introduce any communications protected by the attorney-client privilege or work product doctrine.

<u>An appropriate order</u>

<u>will be issued</u>.