40778.  SAVANNAH NEWS-PRESS, INC. v. HARTRIDGE.

DECIDED SEPTEMBER 8, 1964.

*Stephens & Gignilliat, Thomas H. Gignilliat,* for plaintiff in error.

*Lewis & Javetz, Emanuel Lewis, Walter C. Hartridge, II,* contra.

EBERHARDT, Judge. ■ The general grounds are not argued, orally or by brief, and are treated as having been abandoned. *Code* § 6-1308; *Bradham v. State,* 180 Ga. 187 (178 SE 446).

■ Grounds 1 and 2 of the amendment to the motion for new trial complain of the charge of the court in response to the question which the jury submitted, asserting that the charge was argumentative, confusing and misleading to the jury, and that it was not, in its entirety, sound as an abstract principle of law.

Keeping in mind that the defendant filed defenses both of truth or justification and of privilege we doubt that the court cleared the confusion that he suspected was troubling the jury at the time; rather we are apprehensive that it was compounded.

The charge was not a straightforward answer to the question "If the article is true, can the jury further determine that there was malice and possible libel?"

If the jury found the article to have been *true*, that should have ended their deliberations, for in that event the defense of justification was sustained and a verdict for the defendant was demanded. *Code* § 105-708 provides that "The truth of the charge made may always be proved in justification of the libel or slander." And it has long been held, both in the Supreme Court and this court that truth is a perfect defense in a civil action for libel or slander. *Cook v. Atlanta Newspapers, Inc.*, 98 Ga. App. 818, 819 (107 SE2d 260); *Henderson v. Fox*, 83 Ga. 233 (9 SE 839). We find no better statement of the law than Judge Townsend's in *Savannah News-Press, Inc. v. Harley*, 100 Ga. App. 387 (111 SE2d 259), "A libel is a *false* defamation of another (*Code* § 105-701) and if what is printed is true there is no libel." "[T]he plea [of justification] being established, the action is simply defeated." *Ivester v. Coe*, 33 Ga. App. 620, 623 (127 SE 790).

We suppose there has never been a time since recognition of the action when truth was not an absolute defense. Blackstone asserted: "Also if the defendant be able to justify, and prove the words to be true, no action will lie, even though special damage hath ensued; for then it is no slander or false tale. As if I can prove a tradesman a bankrupt, the physician a quack, the lawyer a knave, and the divine a heretic, this will destroy their respective actions; for though there may be damage sufficient accruing from it, yet, if the fact be true it is damnum absque injuria; and where there is no injury, the law gives no remedy. And this is agreeable to the reasoning of the civil law; 'eum qui nocentem infamat non est aequum et bonum ob eam rem condemnari; delicta enim nocentium nota esse oportet et expedit.' "[3]

---

[3] Blackstone, Commentaries § 125. A translation of the Latin: "It is not just and right that he who exposes the faults

In the old manorial and local courts the defendant in a libel or slander case was permitted to plead "veritas non est defamatio." See 2 Pollock & Maitland, History of English Law, 537.

"The truth is an answer to the action, not because it negatives the charge of malice (for a person may wrongfully or maliciously utter slanderous matter though true, and thereby subject himself to an indictment) but because it shows that the plaintiff is not entitled to recover damages. For the law will not permit a man to recover damages in respect to an injury to a character which he does not, or ought not, to possess." McPheerson v. Daniels, 10 B. & C. 263, 272. And in a note to Wyatt v. Gore, Holt N. P. 299, 308, on the matter of justification it was said: "The ground of the action on the case for a libel, is the quantum of injurious damages which the person libeled either has, or may be presumed to have sustained, from the libelous matter. It is evident, therefore, that if the subject of the libel, both in its substance and measure, be truly imputed to the plaintiff, that there can be no injurious damage. The reputation cannot be said to be injured where it was before destroyed. The plaintiff has previously extinguished his own character. He has, therefore, no basis for an action to recover compensation for the loss of character, and its consequential damage. The law considers him as bringing an action of damage to a thing which does not exist. Least of all will it allow such a person lucrari ex mala fama."

This rule in civil actions was, of course, adopted as a part of our common law and, as we have already indicated, has been so recognized and declared both in the decisions of the courts and in the language of *Code* § 105-708. It is still the rule, both in England and in the vast majority of the American States.

Some confusion may well arise from the fact that the rule in criminal cases was different at common law. In that area Lord Mansfield is credited with having declared "The greater the truth, the greater the libel." Evidence of truth was excluded in criminal cases, a practice having its origin in the Court of Star

---

of a guilty person should be condemned on that account; for it is proper and expedient that the offenses of the guilty should be known."

Chamber about the beginning of the reign of James I. 5 Coke 125. It is said that the theory of the rule was that when one honestly believed another had committed a crime it was his duty to cause the offender to be prosecuted and brought to justice, and that to neglect that duty and publish the offense to the world, bringing the party into disgrace and disrepute without affording him a chance to show his innocence by a judgment of the court was libelous. "Although arbitrarily established and considered at the time an innovation, this doctrine came to be a well recognized rule of the common law." Ray, *Truth: A Defense to Libel*. 16 Minn. L.R. 43, 45. It was recognized in the House of Lords in connection with the consideration of Fox's Libel Bill which was to declare the right of a trial by jury in this kind of case, and was brought over as a part of the common law to be applied in the American states. See Commonwealth v. Morris, 1 Va. Cas. 176; Commonwealth v. Snelling, 15 Pick. (Mass.) 337.

Apparently the rule was applied in the courts of Georgia until December 12, 1815, when the General Assembly provided otherwise: "Whereas the existing law relative to indictments for libel hath been found on experience to be unjust in itself, and in direct hostility to the spirit and genius of our free institutions: Be it enacted by the Senate and House of Representatives of the State of Georgia in General Assembly met, and it is hereby enacted by the authority of same:

"That in all future indictments for libel, it shall be lawful for the defendant to file a plea of justification and to give the truth in evidence under the same, agreeably to the rules of evidence, and of the proceedings of the courts of law, any law, usage or custom to the contrary notwithstanding." Lamar's Compilation of Ga. Laws, 1810-1819, p. 294.

Later the substance of that Act appeared as § 210, Sec. XI of Cobb's Digest, p. 812, and then as § 4409, Sec. XI of the Penal Code of 1861. When the Constitution of 1877 was adopted it was written into it as a part of the Declaration of Rights, and has remained as a constitutional provision to this day. See Art. I, Sec. II, Par. I (*Code Ann.* § 2-201) of the Constitution of 1945. Many others of the States have adopted similar

provisions, either by way of statute or by constitutional provision, and some by both, concerning truth as a defense to criminal libel. Apparently only New Hampshire has made no provision in the matter.

There is, of course, a considerable difference in the defense of justification or truth and that of privilege. The first, if established in civil cases is absolute, while the latter is generally conditional. There are instances of absolute privilege, as provided in *Code* § 105-711, but newspaper reports privileged under *Code* § 105-704[4] are conditional, and "if the privilege is used merely as a cloak for venting private malice, and not bona fide in promotion of the object for which the privilege is granted, the party defamed shall have a right of action." *Code* § 105-710. It is thus that the privilege may be lost.

If it could be said without question that the query directed to the court was whether, even though the report of the court proceedings was fair and honest, the jury might further find that the defendant had used the report as a cloak to vent its private malice against the plaintiff, we should find no fault with the judge's answer to the question.

It seems to us that the attempt of the judge to clear in his own mind the import of the query of the jury compounded the confusion. First, he asserted that "the question of the jury is though they believe or they find *the article is true, that it's correct, it is accurate of what took place,* can they further de-

---

[4]"The law recognizes that there ought to be no liability for defamation if the interests of the public outweigh the individual's right to his reputation. An important instance of such privileged publication is the fair and accurate reporting of judicial proceedings which the public may attend, the justification being that if the public is entitled to be present in court it is equally entitled to be informed of what goes on in its absence. The reporting of proceedings in court is simply an enlargement of the audience which hears them in court. Nadelmann, *The Newspaper Privilege,* 54 Columbia L. R. 359, 363. "It is through publicity alone that justice becomes the mother of security." Jeremy Bentham, *Draught for the Organization of Judicial Establishments,* 4 Bentham Works 305, 317.

termine that there was malice and possible libel." Then he proceeded to assert that the query was "limited to whether that article was *a correct report of what took place in the police court.*" After making both statements he inquired of the jury, "That's how I interpret the question. Am I correct in that?" And the foreman of the jury replied, "Yes sir, you are."

If we had been on the jury we should not have known whether the judge thought the question was as to a finding of the correctness of the *facts reported* in the article or as to a correct report of what took place upon the trial in the police court, and not being able to discern that, we may well have concluded that the remainder of his reply to the query was applicable to the defense of justification as well as of privilege.

And since the judge recognized the likelihood of confusion on the part of the jury relative to the two defenses we think he should have made it perfectly clear that if they found the *facts reported* as to what happened on the street in connection with the plaintiff's arrest as well as what followed to have been true and correct, the defense of justification was established and the jury should go no further. The fact that this had been done when the jury was charged at the close of the evidence did not, in our opinion, relieve the duty to do it again in response to the question.

In ground 3 of the amendment there is exception to the charge: "I charge you that if you find that that article was true you would be authorized to find in favor of the defendant. What took place in police court is for you to determine. If it is true no one can be mulcted for telling the truth. And if you find it's true your verdict should be for the defendant, and that ends the matter. Lack of malice in cases of privileged communications will prevent recovery. Now after you have determined the issue of truth or false, you then pass to the issue of privilege. A newspaper has a right to make a fair and honest report of a judicial proceeding."

It is contended, and we agree, that this charge confuses the defenses of justification and of privilege. In the first sentence the court tells the jury that if they find the article to have

been *true* they would be *authorized* to find for the defendant; almost in the next breath he tells them that if they find it's true their "verdict should be for the defendant, and that ends the matter," immediately following which he asserts that lack of malice in case of *privileged* communications will prevent a recovery, and then reverts to the matter of the issue of ·truth or falsity of the article, and then again to the matter of privilege.

Since the two defenses are separate and are measured by different standards we think the judge should have avoided carefully any intermixing of the two in his instructions. The statements, except the first, may well be true as abstract principles if given in connection with the proper defense, but we doubt that the jury could proceed under the charge given with a discernment sufficient to keep these defenses straight and apply the principles appropriately. The first statement was inaccurate, for if the defense of justification or truth be established the jury is not simply *authorized* to return a verdict for the defendant; it *must* do so.

In ground 4 there is exception to the charge: "Now whether a publication is libelous is also a question of fact for the jury. You look to this article; was it libelous? I charge you that this article was not libelous per se; that is, of itself. If it had charged Mr. Hartridge with the commission of a crime it would have been ·libelous per se. The charge in the petition is that he—is that it was libelous because he drove as if he were under the influence—as one under the influence of intoxicants. Look to the whole article. Was that the impression there? Was that the impression left on the public mind, of the average reader? Because a newspaper article does not have ̇ to be interpreted as the publisher thinks it should be interpreted, but by the effect it leaves on the mind of the average reader. Did that hold him up to ridicule or contempt? If that was the effect of it, and that was the effect on the mind of the average reader, you would be justified in holding it libelous. That is your criteria." The complaint is that this charge nullifies the defendant's defense of truth because the jury would not be justified in holding the article libelous unless they also found it to be false. Doubtless the court had in mind the defense of priv-

ilege in giving this charge, but since the charge is not specifically identified to that defense the jury may have accepted it as being applicable as well to the defense of justification.

In ground 5 there is exception to the charge: "The issues, as I see it in this case, are these: Was the article false or true, by which we mean substantially so one way or the other; was it false or true? If it was true, there is no liability on the newspaper. If it was false, there is the first ingredient of liability, falsity. It was published; there can be no question about that. Now was it maliciously published? If there was malice in the publication of this article, actual malice, intentional malice, wilful motive to hurt, regardless of whether it was true or false, then the shield of privilege would be removed."

It is contended, and we agree, that here again the court has intermixed the principles of law applying to the two defenses without identifying to the jury in connection with the principles as to which defense they were to be applied—thus confusing the jury. There is further exception to the portion "If there was malice in the publication of this article, actual malice, intentional malice, wilful motive to hurt, regardless of whether it was true or false, then the shield of privilege would be removed," on the ground that this is a charge that the truth of the article, even if established, was not a perfect defense. It may well be that the court intended to say to the jury that regardless of whether the article was *fair and honest reporting* of the judicial proceeding, if malice were shown in its publication the privilege would be removed, but here again it must be kept in mind that a plea of justification had been filed, and we apprehend that the jury may have understood this portion of the charge to be applicable to it, especially since the immediately preceding portion was applicable.

In ground 7 error is assigned on the charge: "Was this article false, the article under consideration in this case, or was it true? That is one of the issues of fact for you to determine. The purpose of all legal investigation is the determination of the truth. And I charge you that in determining that fact you should look to the whole article and the background. The mere fact that there are variations or immaterial matters which

might be false does not necessarily make that article false, but if the matter is material and you find it false—you have a right to consider the material matters; the immaterial matters you fit them in the pattern as you go along. The Court of Appeals has decided that even though it was a feature story it didn't make it libelous. It has got to be false to be libelous; false in substance, materially false; not false maybe in some incidental immaterial matter. You look to it as a whole and determine in the background of this case and the evidence whether or not that is [a] false or a true report of what took place in the recorder's court."

Again, we think the charge confused the principles applicable to the two defenses.

■ In ground 6 error is assigned on the exclusion by the court of testimony of the city editor of another newspaper offered by the defendant as to whether the article was "in bad taste" or was "in poor taste," and to the statement of the court in excluding the evidence "That's a question for the jury to determine."

It is contended that the evidence offered was admissible in rebuttal of that which had been admitted on behalf of the plaintiff when the reporter who had written the story testified that he had encountered some difficulty and disagreement with the city editor at the time the story was being prepared for running on the local news page of the paper together with a picture of the plaintiff. He testified that although the facts of the article were true and correct he thought the story should have been carried on the inside of the paper and not on the back page where local items of "hard news" were carried, and that it was not a story that he thought deserved an accompanying picture of the subject; that the story had not been written for a picture, was a casual piece of writing and was not "hard news."

Upon being asked why he objected to the treatment that the city editor planned for the story and why he threatened to resign his job if it were given that treatment, Kelly, the reporter, replied: "Because I thought it was a display of poor taste. Also it was the use of the story that I had written . . . with a specific thing in mind in an entirely different way. Mr. Berger (the city editor) wouldn't listen to me, and I thought I knew

Savannah better than he did. I'm sure I do. I just felt that it was in such poor taste that there was no excuse for using this particular story on the back page. The story was "ballooned" by printing on the back page [which] gave it more prominence than it should have had. The photograph was unspeakable poor taste." Kelly found no fault with the contents of the story but asserted that *"the error was in running* [it] *contrary to my own wishes in the matter."*

Whether the article be regarded as in good taste or in poor taste is irrelevant in determining whether it was libelous. Though written in the best of literary styles and given the most conservative of treatment on the inside pages of the paper without a picture, if it contained statements about the plaintiff that were false, material and defamatory it was libelous. On the other hand a news item written in the poorest of taste, as, for example, including lavish and undue praise of an individual, his skills and accomplishments, accompanied by his picture and given the most prominent space in the paper, may be wholly free of any libel.

Nor can the personal preferences, wishes or predilections of the reporter who wrote the story constitute any standard for determining whether it was libelous. Suppose the reporter had wanted the story given the feature treatment, accompanied by a picture and carried in a prominent place in the paper, but the city editor had determined that it should have no more than a routine treatment, published in the want ad section and without any picture, could it be said that the mere violation of the reporter's wishes rendered the story libelous? Something more must appear.

Further, when the matter of whether there was malice in the publication of the story is considered, the violation of the reporter's wishes may indicate some friction existing between the city editor and the reporter, but shows nothing of any malice on the part of the city editor or of the publisher against the plaintiff. Again, something more must appear.

We may observe that the matter of what is "good taste" or "poor taste" in a newspaper story is a very nebulous and elusive thing, just as is what is "good taste" or "poor taste" in women's

styles and fashions. In the newspaper world there is a variety of publications, giving a variety of treatment to the stories carried as news, ranging from the tabloid to the sophisticated; and all are generally accepted by the reading public. Some readers like one type while others prefer another.

So long as it is not libelous those who are in charge of the newspapers must be left to judge as to the kind of treatment a story is to receive, and whether reader interest may be stimulated by the carrying of a photograph concerning the subject matter. The mere fact that the treatment of a news item is, in the opinion of some, in "poor taste" does not make it libelous. "The fact that the newspaper saw fit to use the report of this incident as a 'feature' or 'human interest' story would not of itself render it libelous." *Savannah News-Press, Inc. v. Hartridge*, 104 Ga. App. 22, 28 (120 SE2d 918).

If the truth of the article be proven it is immaterial altogether whether it may have been viewed as in "poor taste" by anybody, for the defense of justification is established and the defendant is entitled to a verdict.

The jury is not to resolve the matter under either defense on the basis of how the treatment of the story may have appeared to the reporter, or to the city editor. In connection with the defense of privilege the generally accepted customs and usages of the newspaper business in the community, including all publications having a general circulation there, as to the treatment of news items of this type may be shown, and the jury may consider whether the treatment given this particular story was or was not in keeping with the customs and usages as a circumstance in determining the presence or absence of malice on the part of the publisher against the plaintiff in the publication of the story.

The evidence of the reporter, as we have seen, was objectionable and might have been excluded but was admitted without objection. This, however, did not entitle the defendant to rebut it with similar evidence. "If, in the trial of a case, one party introduce[s] immaterial and illegal evidence without objection, the other party is not thereby entitled to introduce, over objection, other illegal evidence in rebuttal. There can be no equa-

tion of errors in the trial of a case." *Stapleton v. Monroe,* 111 Ga. 848 (2) (36 SE 428). And see *Woolfolk v. State,* 81 Ga. 551 (3a) (8 SE 724). There was no error in the exclusion of the evidence of the city editor.

■ To sum it up, since the article was not libelous per se, the problem with which the jury must wrestle is: (1) Whether, if materially false, the article is of such a nature as to constitute libel per quod, i.e., whether it is calculated to reflect adversely upon the character and reputation of the plaintiff in the mind of the ordinary or average reader. If the jury finds that it does not so reflect, a verdict should be returned for the defendant. (2) If the article is found to be libelous, whether the defendant's plea of justification is proved—establishing the truth of the article—and again, if so, the verdict should be for the defendant. (3) If the article is found to be libelous and defendant's plea of justification is not established, then the jury must go further and determine whether the plea of privilege is established— whether the report of the matter was done fairly and honestly, though in some material particular the facts developed in the recorder's court and reported may have been false. If the jury finds that the report of the matter was fair and honest, the defense of privilege is established. However, the jury must then determine whether the privilege was "used merely as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege is granted," i.e., the dissemination of news in which the general public has an interest. If no malice is found to have been involved in the publication of the article, the defense of privilege having been established, a verdict for the defendant should be returned. But, if the jury finds the presence of malice and lack of bona fides in the publication of the article as news in which the general public has an interest, the plaintiff is entitled to prevail.

*Judgment reversed. Felton, C. J., and Jordan, J., concur. Bell, P. J., disqualified.*