A90A0217. PINKSTON v. CITY OF ALBANY et al.
(395 SE2d 587)

BIRDSONG, Judge.
Appellant was taken into protective custody by officers of the Albany Police Department on November 8, 1986, and was ultimately charged with the offense of "disorderly while intoxicated." After

spending an hour or two in the "drunk tank" at the city jail, he was released on bond. He remained free on bond for approximately two weeks, until he was rearrested on November 21, 1986, on a warrant charging him with attempted escape. That charge was based on allegations that he had attempted to kick out the window of the patrol car in which he had been placed on November 8, 1986. An accusation charging appellant with attempted escape was subsequently filed in state court, but the charge was ultimately nolle prossed based on the prosecuting attorney's representation that "there was insufficient evidence" to proceed on it. Appellant then filed the present action against the City of Albany and seven members of the police department seeking damages for false arrest, slander, false imprisonment and violation of his federal civil rights. He brings this appeal from an order granting summary judgment to all of the defendants on all counts of the action. *Held*:

1. The false arrest and false imprisonment claims are bottomed on allegations that appellees, Officers Ingram and Dunn, lacked probable cause to arrest the appellant on the charge of disorderly while intoxicated.

Under the facts of this case, there is no evidence, and thus no issue, of the peculiar "malice" and "lack of probable cause" that must underlie a cause of action for false arrest, according to OCGA §§ 51-7-1; 51-7-2 and 51-7-3, nor is there any evidence of "unlawful detention" so as to create a cause of action for false imprisonment according to OCGA § 51-7-20 et seq.

Appellant's affidavit testimony that he was not drunk or disorderly would of course constitute a defense to the crime charged; but is not alone sufficient to create a question of civil tort and send to the jury a fact issue of false arrest. If the mere denial of having committed the crime is enough to raise an issue of false arrest, virtually all criminal prosecutions resulting in a nolle prosequi or acquittal could result in a civil lawsuit. Thus, such actions are not favored unless they are strictly proved and accurately stated. *Hearn v. Batchelor*, 47 Ga. App. 213 (170 SE 203).

The arresting officer's affidavit on motion for summary judgment states: "At approximately 2 a.m. on November 8, 1986 affiant was . . . investigating a complaint . . . by two teenagers . . . who inquired of him why there were off-duty police officers out at a [public] holding pond area . . . who were drinking and carrying on. . . . [A]s I approached [the area] I saw a big bonfire with a number of people gathered around it, and . . . large number of automobiles, perhaps as many as 15. . . . As affiant approached . . . the people in the cars [left in a big hurry] and the people around the bon fire [ran away so that] there were only two people left. . . . [T]hese two people were very, very drunk. They were staggering, and their speech and laughter

and other . . . conduct . . . clearly indicated to me that they were drunk. . . . There were several fifths of whiskey on the hood of [a pick-up] truck, already opened. . . . In the back of the truck there were several cases of beer and an ice chest with ice in it. On the hood of the truck were several guns: A Ruger Speed-Six, caliber .357 Magnum, loaded with six rounds, a Mossburg shotgun loaded with five rounds, and a Ruger assault rifle with a Redfield scope and a 30-round ammunition clip. Affiant also found handcuffs in the pocket of one of the men, who identified himself as John Doe. . . . Affiant asked both men for identification several times. The man who represented himself to be John Doe [Kenneth Andrews] refused to give any identification. . . . He stated that the other man [Pinkston] was a deaf mute . . . and the other man in fact pretended to be a deaf mute and they used sign language with each other. . . . When it became apparent that affiant could not get them to leave or to cooperate in any manner, affiant radioed for Sergeant Dawson. . . . [B]oth Mr. Andrews ["John Doe"] and . . . Pinkston had dirt and mud all over them. . . . Mr. Pinkston had scratches and blood on him and it looked as if they had been fighting. . . ."

A third officer, Major Dunn, was called. Major Dunn decided the pair could not be allowed to leave because of their drunken condition and the possession of weapons. After Sergeant Dawson and Major Dunn put the guns and alcohol in the truck, they helped Ingram put Pinkston in the police car. "Then Mr. Pinkston and Mr. Andrew commenced hollering and yelling and making all kinds of noises, and began kicking at the windows with the heavy boots that they had on."

Officer Ingram also stated: "Up to the point where the men tried to kick out the windows in the police car, [I] had not charged them with anything, and had not arrested them, but had simply taken them into protective custody. . . . However, at the point where they were trying to kick out the windows . . . [I placed them] under arrest for the offense of 'disorderly while intoxicated.' "

Plaintiff Pinkston in his affidavit denied having "run-off" any teenagers; denied being drunk and disorderly; and denied that the fire at the pond was a "bonfire." He stated the fire was only "about two to three feet in diameter and there was at least twenty feet of sand surrounding it so that it was not a hazard." But he also stated he told the officer that he did not light the fire and "had no way to put it out." He further swore that when Officer Ingram arrived there was only a one-liter bottle of tequila on the hood of the pick-up truck; "[o]nly the Ruger Mini-14 rifle was on the hood of the pick-up truck. It was not loaded. . . . The reason the rifle was on the hood of the truck was because a man who was there at the pond had asked to look at it. . . . I have had a firearms license to carry a concealed weapon for the last ten years. . . . My current occupation is as a security

guard. . . ." Plaintiff denied any lack of cooperation on his part or refusal to give information. He denied having dirt and mud all over him but stated: "I had one abrasion." He stated that after being harassed by Officer Ingram for a length of time he finally refused to talk to him until Major Dunn arrived. He denied any obstreperous behavior after being put in the police car with Andrews who, he said, had "been in custody in the car for approximately two hours at this point."

Thus, by plaintiff's own statement, he was at a fire in a public place, with alcohol, displaying a weapon, and he refused to put out the fire. And, though he insists he was doing nothing wrong, he continued to parry with the officers *for about two hours after Andrews had been placed in the police car.*

The particular "malice" necessary to found a cause of action for false arrest (OCGA § 51-7-1, is *"personal spite* or . . . a *general disregard of the right consideration of mankind, directed by chance against the individual injured."* (Emphasis supplied.) OCGA § 51-7-2. The requisite "lack of probable cause" exists "when the circumstances are such as to satisfy a reasonable man that the accuser *had no ground for proceeding but his desire to injure the accused. . . ."* (Emphasis supplied.) OCGA § 51-7-3. Although this latter code section provides that such lack of probable cause "shall be a question for the jury," there is nothing to send to the jury when the plaintiff does not at least raise some evidence creating an issue of fact on the matter, as it is his duty to prove the elements of the tort. *Joiner v. Ocean Steamship Co.,* 86 Ga. 238 (12 SE 361).

Plaintiff's own version admits enough to conclude beyond any issue of fact that his arrest was not based on the officers' "personal spite or . . . a general disregard [for] mankind, *directed by chance* [at him]," (OCGA § 51-7-2); and that there was ample *"ground for proceeding [other than the officer's] desire to injure the accused"* (OCGA § 51-7-3). (Emphasis supplied.)

Even assuming, arguendo, an absence of ordinary probable cause (reasonable suspicion), nevertheless, the law does not presume malice or animus against an officer merely because in the discharge of his legal functions, he does an illegal act. See *Campbell v. State,* 48 Ga. 354.

To have a cause of action and raise an issue of false arrest for a jury, plaintiff must at least show some evidence of the animus required by §§ 51-7-2 and 51-7-3. Therefore, even giving plaintiff the benefit of every doubt on defendants' motion for summary judgment (*Doug Howle's &c. Dodge v. Chrysler Credit Corp.,* 191 Ga. App. 556 (382 SE2d 364); *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (126 SE2d 442)) so as to hypothecate that he was not drunk and disorderly, we must conclude he still has not raised against any of the officers an

issue of the actual spiteful type of malice and lack of probable cause that must be present to support an action for "false arrest" under § 51-7-1 et seq.; and certainly the detention was not "unlawful" so as to amount to false imprisonment under § 51-7-20.

2. "The record is barren of any evidence of 'implementation of an intentional policy or a constitutional deprivation resulting from an intentionally corrupt or impermissible policy' so as to find a cause of action under 42 USC § 1983." *Holloway v. Rogers*, 181 Ga. App. 11, 13 (351 SE2d 240). See generally *Monell v. Dept. of Social Svcs.*, 436 U. S. 658 (98 SC 2018, 56 LE2d 611); *Owen v. City of Independence*, 445 U. S. 622 (100 SC 1398, 63 LE2d 673); *City of Cave Spring v. Mason*, 252 Ga. 3 (310 SE2d 892). Indeed, appellant has not even *alleged* that any of the asserted wrongs committed against him resulted from the enforcement or implementation of an intentionally corrupt or impermissible policy on the part of the city. It follows that he has asserted no basis for a recovery of damages against the city, with the result that the city was properly granted summary judgment.

3. Appellant's slander claim is based on statements allegedly made by the officers who executed the arrest warrant on November 21, 1986, to the effect that he was being arrested for attempted escape. However, the officers have not been identified, and there is no question that this was in fact the charge for which he was arrested at that time. "[I]t has long been held, both in the Supreme Court and this court that truth is a perfect defense in a civil action for libel or slander." *Savannah News-Press v. Hartridge*, 110 Ga. App. 203, 206 (138 SE2d 173). It follows that the trial court did not err in granting summary judgment to the appellees on this count of the complaint.

4. The claim against appellee Carol Huff is based on allegations that she unlawfully refused to permit him to post his own bond when he was "booked" into the jail on the "disorderly while intoxicated" charge, thereby causing him to be confined in the "drunk tank" for an hour or two until a friend arrived to post bond for him. However, Ms. Huff, a civilian records clerk employed by the police department, averred in her affidavit that her duties as "booking officer" were merely "to fill out an arrest booking report which gives personal information on the subject, to make an inventory of [the defendant's] belongings and reduce it to writing and have him sign it." While she admitted having told the appellant "that he would not be allowed to make bond until he sobered up or until some responsible person came to take custody of him," there is no suggestion that this was a policy of her own making or that she had any discretion in the matter. Accordingly, the trial court was also correct in concluding that she was entitled to summary judgment.

5. The defendants, Officers Dawson, O'Conner and Williams, each averred without dispute that he had merely witnessed the arrest with-

out actively participating in it. We have held, in any case, that there was no "false arrest." Accordingly, the trial court did not err in awarding summary judgment to these three appellees with respect to appellant's false arrest and/or false imprisonment claims.

6. The remaining defendant, appellee Lee N. Johnston, Jr., is alleged to be liable for false arrest based on his conduct in swearing out the warrant for appellant's arrest on the charge of criminal attempt to escape. Officer Johnston averred that he signed the affidavit for the warrant "[p]ursuant to an order of the Recorder of the City of Albany ordering that the case of 'disorderly while intoxicated' against [appellant] be transferred to the state court as a charge of 'criminal attempt to escape,' and based on the information available to affiant from the plea records, which in affiant's opinion constituted probable cause to believe that [appellant] had committed the offense of criminal attempt to escape by trying to kick out the window of a police car in which he had been confined. . . ." These averments establish without dispute that Johnston was not acting maliciously in swearing out the warrant but was simply complying in good faith with instructions given to him by the judicial officer to whom the case was then assigned. See OCGA § 51-7-21, as to any possible claim for false imprisonment for this arrest. It follows that he, too, was entitled to summary judgment.

*Judgment affirmed. Cooper, J., concurs. Banke, P. J., concurs specially.*

BANKE, Presiding Judge, concurring specially.

1. I agree that appellees Ingram and Dunn, the officers who arrested the appellant on the original charge of "disorderly while intoxicated," were entitled to summary judgment on the appellant's false arrest claim arising from that incident; however, I reach that conclusion by a different route from that traveled by the majority.

The majority concludes that Ingram and Dunn were entitled to summary judgment because the appellant failed to present evidence "of the actual spiteful type of malice and lack of probable cause that must be present to support an action for 'false arrest' under § 51-7-1 et seq. . . ." I cannot agree that there is a special "spiteful kind of malice" which must be proven in false arrest actions, as opposed, presumably, to a lesser, non-spiteful kind of malice which will suffice in other types of actions in which proof of malice is required. Furthermore, I believe the majority's analysis improperly shifts to the appellant the burden of proving his case on motion for summary judgment. The appellant unequivocally averred in his affidavit that he had been neither drunk nor disorderly at the time of his arrest. If that is true, then the officers obviously had no cause to arrest him on the charge of disorderly while intoxicated; and under OCGA § 51-7-44 the absence

of such cause is a circumstance from which malice could be inferred.[1] While the appellant's credibility on this issue is certainly open to question, it is axiomatic that "the trial court cannot in considering summary judgment weigh the evidence or determine its credibility." *State Farm Fire &c. Co. v. Martin*, 174 Ga. App. 308, 309 (329 SE2d 577) (1985). Accord *Ash v. Spear*, 137 Ga. App. 12, 13 (223 SE2d 26) (1975). See also *Miller v. Douglas*, 235 Ga. 222, 223 (219 SE2d 144) (1975). Furthermore, OCGA § 51-7-3 specifically states that "[l]ack of probable cause shall be a question for the jury. . . ."

I would hold that Ingram and Dunn were entitled to summary judgment on the false arrest claim not because of the appellant's failure to establish the existence of a material factual conflict with regard to his conduct and condition on the night in question but because it is apparent without dispute from the record that there has never been any formal disposition of the charge for which they arrested him. "To recover in tort for either malicious prosecution or malicious [or false] arrest, the [plaintiff has] the burden of showing that the prior criminal proceeding, whatever its extent, ha[s] terminated in [his] favor." *McCord v. Jones*, 168 Ga. App. 891, 892 (311 SE2d 209) (1983). Accord *Smith v. Embry*, 103 Ga. App. 375, 379-81 (119 SE2d 45) (1961). Although the more serious charge of attempted escape which was later filed against the appellant was nolle prossed for lack of evidence after being transferred to state court, the disposition of that charge clearly did not constitute an adjudication that no evidence existed to support the original charge of disorderly while intoxicated. Thus, I would hold that appellees Ingram and Dunn were entitled to summary judgment on the false arrest claim "on the ground that no [such] cause of action had yet accrued." *McCord v. Jones*, supra, 168 Ga. App. at 893.

2. In false imprisonment cases, "it is not necessary to show malice and want of probable cause, but only that the imprisonment was unlawful." *Collins v. Sadlo*, 167 Ga. App. 317, 318 (306 SE2d 390) (1983). Where, on the other hand, recovery is sought against a police officer for effecting an unlawful arrest without a warrant, proof of malice and want of probable cause clearly is required; and the cause of action therefore is for false arrest rather than for false imprisonment. See generally OCGA § 51-7-1; *Smith v. Embry*, 103 Ga. App. 375, 378 (3) (119 SE2d 45) (1961). There being no question that Ingram and Dunn were acting in their official capacity as police officers

---

[1] While this Code section appears in the portion of Title 51 dealing with malicious prosecution actions, there is no reason why it would not also apply to false arrest actions. Cf. *McCord v. Jones*, 168 Ga. App. 891, 892 (311 SE2d 209) (1983) (holding that "[m]alicious prosecution and malicious arrest differ only in that malicious prosecution contains the additional element of showing that a prosecution was carried on").

in arresting the appellant, I accordingly agree that the appellant has no cause of action against them for false imprisonment.

3. I concur fully in the remainder of the majority opinion.

DECIDED JUNE 6, 1990 —
REHEARING DENIED JUNE 21, 1990 — CERT. APPLIED FOR.

*James N. Finkelstein*, for appellant.
*Landau & Davis, Al Grieshaber, Jr., James V. Davis*, for appellees.