A92A2155. KEMP et al. v. ROUSE-ATLANTA, INC. et al.
(429 SE2d 264)

McMURRAY, Presiding Judge.

Appellants Kenneth Bernard Kemp and Errol R. Manson filed an action for damages against the defendant-appellees for false arrest, false imprisonment, malicious prosecution, assault and battery, slander, and negligent hiring, retention and training. The trial court granted appellees' motion for summary judgment as to all allegations, giving rise to this appeal.

On June 29, 1989, appellee Lawrence Sinclair was patrolling Underground Atlanta on the evening shift of his job as a security guard employed by appellee Rouse-Atlanta. He spotted appellants in a restricted area that was off limits to the public. Each of them was carry-

ing a shopping bag labeled "B. Gallerie" which contained merchandise later identified by appellee Phillip Brock, the manager of B. Gallerie, as belonging to the shop. The retail business, incorporated in California as appellee B. Gallerie Group, Inc., was a tenant of appellees Underground Festival, Inc. and Underground Atlanta Joint Venture.

Sinclair approached appellants to find out what they were doing in the unauthorized area, and asked if they had sales receipts to show they had purchased the merchandise in the shopping bags. Appellants had no receipts, but claimed Manson worked for B. Gallerie and had been given permission to rummage in an area where the newly-opened shop was discarding merchandise; and that Manson had asked Kemp to help him remove the discarded merchandise. However, Manson was not working at the store at the time of the encounter. In his deposition and affidavit, Sinclair swore that he immediately radioed for backup assistance and had no further discussion with appellants until the backup arrived. At that time Sinclair stated he asked appellants to accompany him to the security substation for further investigation and they agreed; and that he did not make physical contact with either man. When they arrived at the security substation, Sinclair told appellants to be seated and left the room to contact B. Gallerie's manager to identify the merchandise.

When Sinclair left to locate the store manager, Atlanta Police Officer Warren Meredith was present in the substation booking a suspected shoplifter. Meredith overheard one of the appellants tell the other he had found the merchandise in a garbage dumpster and intended to take it. Based upon this conversation Meredith concluded he had probable cause to arrest appellants for theft of lost or mislaid property. He placed appellants under arrest, charged and handcuffed them and, with the aid of several other Atlanta police officers, searched them. Sinclair did not assist in the arrest nor request that either appellant be arrested. Brock arrived after the arrest and identified the merchandise as belonging to B. Gallerie and missing from the stockroom. Based on this identification of the property and Brock's decision to prosecute, appellants were also charged with receiving stolen property. They were tried only on that count. After hearing evidence, the trial court directed a verdict of acquittal on the sole ground that the State had failed to meet its burden of proving beyond a reasonable doubt that the property had been stolen from B. Gallerie, so there was insufficient evidence to convict appellants of theft by receiving stolen property. *Held*:

1. Appellants contend that in order to justify the grant of summary judgment in a negligence case, the movant must show by uncontroverted evidence that its acts in no way contributed to the proximate cause of the damage incurred; and that because they could have

shown to a jury at trial that the reason for the false arrest was the inadequate and improper training received by Sinclair, their entire complaint should not have been dismissed. In answers to interrogatories concerning the basis for this contention, appellants claimed that Sinclair assaulted them, "improperly handled the situation by not allowing . . . Manson to identify himself," and "falsely accused [appellants] of theft before investigating the situation when a reasonable explanation was at hand."

"The appropriate standard of care in a negligent hiring/retention action is whether the employer knew or should have known the employee was not suited for the particular employment. [Cits.]" *Harvey Freeman & Sons, Inc. v. Stanley*, 189 Ga. App. 256, 258 (2) (a) (375 SE2d 261) (1988) rev'd on other grounds in 259 Ga. 233 (378 SE2d 857) (1989). "An employer's liability for negligent hiring or retention of an employee requires proof that the employer knew or should have known of the employee's violent and criminal propensities, [cits.], and there was no evidence of such knowledge in this case." *Odom v. Hubeny, Inc.*, 179 Ga. App. 250, 252 (2) (345 SE2d 886) (1986). Moreover, "the training [Sinclair] was required by statute and agency regulations to receive was [not] designed to uncover the trainee's latent character defects for purposes of placing the employer on notice that the trainee possessed violent or criminal propensities. Thus [Rouse-Atlanta's] failure to provide that training does not avail appellants." *Kelley v. Baker Protective Svcs.*, 198 Ga. App. 378, 379-380 (401 SE2d 585) (1991). Appellants have pointed out no evidence in the record which would establish the existence of triable issues on the negligent hiring, training and retention of Sinclair by his employer, or that Rouse-Atlanta had actual or constructive knowledge of Sinclair's propensity to commit the acts complained of.

2. Claiming that they were unlawfully stopped and detained by force, appellants assert that far from voluntarily accompanying Sinclair to the security substation, Manson was grabbed by the belt loops of his pants and Kemp was told not to move while Sinclair summoned two other Rouse security officers to help him take appellants there. They allege that from these actions they were made to feel they were under arrest and not at liberty to leave.

We have been referred to no portions of the record in which appellants submitted sworn evidence or testimony in this regard, but our search discloses that such facts were alleged in the pleadings and appeared in an answer to interrogatories filed by Manson's attorney in response to appellees' motion for summary judgment. The answer states that Sinclair bent Manson's left arm behind his back and grabbed him by his trousers; and that Sinclair improperly handled the situation by not allowing Manson to identify himself and "falsely accused him of theft before investigating the situation when a reason-

able explanation was at hand." It appears from the transcript of the criminal trial that the verdict of acquittal was directed before either defendant testified, and no depositions or affidavits filed in the civil action presenting any sworn evidence to this effect are included in the record on appeal. However, Sinclair's and Meredith's testimony in the criminal trial and their affidavits supporting the motion for summary judgment were consistent that appellants were not physically restrained or threatened by Sinclair or any other Rouse security guards; and that they voluntarily chose to accompany Sinclair to the substation to continue the investigation, after which Meredith took charge.

"A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). See also *Collins v. Byrd*, 204 Ga. App. 893 (1), 894 (420 SE2d 785) (1992). Appellants did not specifically point out that their evidence of unlawful detention was contained in Manson's answers to interrogatories, but it does appear in the record.

"The essential elements of the cause of action for false imprisonment are a detention of the person of another for any length of time, and the unlawfulness of that detention. OCGA § 51-7-20. A detention need not consist of physical restraint, but may arise out of ' " 'words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit; and it is sufficient if they operate upon the will of the person threatened, and result in a reasonable fear of personal difficulty or personal injuries.' (Cit.)" (Cits.)' [Cit.]" *Fields v. Kroger Co.*, 202 Ga. App. 475 (414 SE2d 703) (1992). " 'It is essential, however, that the restraint be against the plaintiff's will; and if he agrees of his own free choice to surrender his freedom of motion, as by remaining in a room or accompanying the defendant voluntarily, to clear himself of suspicion or to accommodate the desires of another, rather than yielding to the constraint of a threat, then there is no imprisonment.' [Cit.]" *J. H. Harvey Co. v. Speight*, 178 Ga. App. 812, 813 (344 SE2d 701) (1986).

"In addition, OCGA § 51-7-60 precludes a recovery for false imprisonment when it is shown that the owner or operator of a store reasonably believed the person detained was engaged in shoplifting. OCGA § 51-7-60 thus implicitly recognizes the right of a shop owner to protect himself from shoplifting by detaining a customer who has acted in a suspicious manner. Where a detention occurs its reasona-

bleness is a jury question. However, 'there is no issue for the jury where there is no detention.' [Cit.]" *Fields v. Kroger Co.*, 202 Ga. App. 475, supra at 475-476. Despite the additional protection against shoplifting afforded by OCGA § 51-7-60, since Manson's answers set forth nonconclusory facts that would be admissible in evidence on motion for summary judgment, we conclude that there was sufficient evidence to give rise to a triable issue. See *Gunnin v. Swat, Inc.*, 195 Ga. App. 344 (393 SE2d 700) (1990).

3. We conclude that the facts stated above also raise a triable issue as to whether Sinclair's actions against Manson constituted an assault and battery as contemplated by OCGA § 51-1-13. " ' "In the interest of one's right of inviolability of one's person, any unlawful touching is a physical injury to the person and is actionable (as a battery)." (Cits.)' [Cits.]" *Haile v. Pittman*, 194 Ga. App. 105, 106 (3) (389 SE2d 564) (1989). " 'Where all the apparent circumstances, reasonably viewed, are such as to lead a person reasonably to apprehend a violent injury from the unlawful act of another, there is an assault.' [Cit.] 'Any act of physical violence (and the law will not draw a line between different degrees of violence), inflicted on the person of another, which is not necessary, is not privileged, and which constitutes a harmful or offensive contact, constitutes an assault and battery.' [Cit.]" *Greenfield v. Colonial Stores*, 110 Ga. App. 572, 574-575 (1) (139 SE2d 403) (1964).

4. In regard to the claims of false arrest and malicious prosecution, the evidence is undisputed that Sinclair did not place appellants under arrest when he took them to the security substation for further investigation, but that they were arrested by Atlanta Police Officer Meredith who, after overhearing a conversation between appellants out of the presence of Sinclair, independently concluded that he had probable cause to do so. Likewise, no prosecution was initiated by Rouse or its security agents, but by Brock on behalf of B. Gallerie. Sinclair's encounter with appellants was preliminary to their arrest and subsequent prosecution, and "[a]ppellees cannot be held liable for the actions of the on-duty policemen who formally arrested appellants. The on-duty policemen were not appellees' agents. They were the official agents of the State." *Haile v. Pittman*, 194 Ga. App. 105, supra at 107.

What facts and circumstances amount to probable cause is purely a question of law, and even assuming a jury question was presented on the issue of probable cause, appellants were also required to produce evidence of malice. *Barber v. H & H Muller Enterprises*, 197 Ga. App. 126, 129 (2) (b) (397 SE2d 563) (1990). "[T]he law does not presume malice or animus against an officer merely because in the discharge of his legal functions, he does an illegal act. [Cit.]" *Pinkston v. City of Albany*, 196 Ga. App. 43, 44 (1), 46 (395 SE2d 587) (1990).

"Although not expressly provided by statute, the malice ' " 'contemplated by law in an action for malicious prosecution is the *same* as in an action for malicious arrest.' " ' [Emphasis in opinion.] [Cits.] Malice in an action for malicious prosecution or malicious arrest consists 'in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured.' [Cits.]" *Barber v. H & H Muller Enterprises*, 197 Ga. App. 126, supra at 130. "To have a cause of action and raise an issue of false arrest [or malicious prosecution under OCGA § 51-7-40], for a jury, plaintiff must at least show some evidence of the animus required by [OCGA] §§ 51-7-2 and 51-7-3. Therefore, even giving [appellants] the benefit of every doubt on [appellees'] motion for summary judgment . . . , we must conclude [they] still [have] not raised against any of the officers an issue of the actual spiteful type of malice and lack of probable cause that must be present to support an action for 'false arrest' [or malicious prosecution]. . . ." *Pinkston v. City of Albany*, 196 Ga. App. 43, supra at 46-47.

5. Appellants originally filed their action on April 4, 1990, against Rouse-Atlanta d/b/a Rouse Security, Sinclair, Brock and B. Gallerie Group. They voluntarily dismissed the complaint on June 12, 1991, and refiled it on June 21, 1991, naming as additional defendants Underground Festival, Inc. and Underground Joint Venture. The alleged defamatory statements were made on June 29, 1989. "Therefore, pretermitting all other issues, it is clear that [appellants' slander] action is barred by the one-year statute of limitation imposed by OCGA § 9-3-33." *Wiggins v. C. & S. Nat. Bank*, 173 Ga. App. 761 (1) (328 SE2d 222) (1985).

*Judgment affirmed in part and reversed in part. Cooper and Blackburn, JJ., concur.*

## ON MOTION FOR RECONSIDERATION.

For the first time, in their motion for reconsideration, appellees point out that the responses to their interrogatories were signed only by appellants' attorney, and were not answered under oath and signed by appellants personally as required by OCGA § 9-11-33 (a) (2). Thus, they contend this court's reliance on appellants' unverified responses to establish that a triable issue existed was inappropriate as a matter of law because the invalid responses were inadmissible as evidence. In *Gregory v. King Plumbing*, 127 Ga. App. 512, 513 (2) (194 SE2d 271) (1972), which appellees cite as authority, this court held that such an ineffectual attempt to respond did not constitute an answer, and therefore, under the circumstances there, "the trial judge did not abuse his discretion in finding that the defendant wilfully failed to answer interrogatories and in imposing the harsh sanctions

of striking defendant's answer and entering a default judgment."

If appellees had followed the proper pretrial procedures this defect could have been remedied. "OCGA § 9-11-37 provides two avenues by which sanctions may be imposed on a party for failure to permit discovery. Where some response is made, the propounding party may seek a court order compelling further answer pursuant to [OCGA] § 9-11-37 (a), and only the subsequent violation of such an order authorizes sanctions under [OCGA] § 9-11-37 (b). Alternatively, sanctions may be sought immediately for total failure to respond to discovery requests pursuant to [OCGA] § 9-11-37 (d) without necessity of first obtaining a court order compelling compliance. [Cit.]" *Rivers v. Goodson*, 184 Ga. App. 70, 71 (2), 72 (360 SE2d 740) (1987). An unverified response to interrogatories is not so evasive and incomplete as to be treated as a complete failure to answer. See *Rivers v. Goodson*, 184 Ga. App. 70, supra at 73. Therefore, a mere technical failure to comply with an order compelling discovery, or an inadequate discovery response after entry of such an order, does not justify the extreme sanction of default or dismissal of the complaint. See *Johnson v. Lomas Mortgage, USA*, 201 Ga. App. 562, 564 (3) (411 SE2d 731) (1991).

Having failed to seek compliance with these procedural rules, or sanctions of any kind, or even a ruling from the trial court on the admissibility of the facts alleged in these responses, appellees cannot now proclaim them inadmissible. Not only did appellees fail to properly raise an objection to the lack of verification of appellants' interrogatory responses, they submitted their interrogatories and appellants' responses to the trial court in support of their motion for summary judgment, and based their argument for grant of summary judgment on the unverified answers contained therein. " ' "A party cannot ignore during a trial that which he thinks to be error or an injustice and take his chances on a favorable [outcome] and then complain later." [Cit.]' [Cit.]" *Dept. of Transp. v. Harris*, 201 Ga. App. 160 (1) (410 SE2d 360) (1991). Since issues never raised at trial will not be considered for the first time on appeal, *Carruth v. Brown*, 202 Ga. App. 656, 657 (415 SE2d 470) (1992), such issues certainly should not be considered for the first time on a motion to reconsider a ruling made on appeal.

*Motion for reconsideration denied.*

DECIDED FEBRUARY 24, 1993 —
RECONSIDERATION DENIED MARCH 17, 1993 —

*Dwight L. Thomas, Avis F. Sanders*, for appellants.
*Alston & Bird, Russell W. Thorpe, Jeffery M. Brown, Renee M.*

*Hom*, for appellees.