A98A0597. GRAND UNION COMPANY v. MILLER.
(503 SE2d 49)

BEASLEY, Judge.
Strickland, a security guard employed by Big Star Food Market, arrested Miller and Nicely after his fellow security guard Fox

informed him that he had observed them shoplifting. When criminal charges against Miller were nolle prossed, she filed a complaint against Grand Union Company d/b/a Big Star Food Markets for malicious prosecution and false imprisonment. Big Star, in moving for summary judgment, contended that a covenant by Miller not to sue Fox absolves it of liability. Miller amended her complaint to add claims that Big Star negligently hired, retained, and supervised Fox and Strickland, and that these store employees had committed an assault and battery on her. The court denied Big Star's motion for summary judgment. We granted its application for interlocutory appeal.

Miller was riding home from work with her friend Nicely one night when, according to Miller, Nicely stopped at Big Star to buy cigarettes and wine and Miller accompanied her inside. Miller testified that while shopping, Nicely told her that she did not have enough money to pay for the merchandise and asked Miller to go out to the car and get more from Nicely's husband. As Miller was exiting the store, she was stopped by Strickland.

While Miller and Nicely were shopping, Fox was observing customers from a concealed catwalk and communicating with Strickland over a two-way radio. Strickland testified that Fox informed him that Nicely put a package of cigarettes in her purse as she and Miller were facing each other and looking up and down the aisles. Strickland decided to stop both women because Fox said they were both involved in the shoplifting.

Strickland stopped Miller after she had cleared the checkout line but before she exited the store. Miller testified that Strickland grabbed her by the arm and told her she needed to come with him because she had something that belonged to the store. Strickland's testimony was that he came up beside Miller and put her in an "escort position," a method used by him for detaining all suspected shoplifters. This involved his reaching behind her and putting his hands on the back of her arms so he could control her if she were uncooperative. He escorted her to a confrontation room in the rear of the store.

There is conflicting evidence on the question of where Nicely was positioned when she was stopped. Strickland testified that after stopping Miller, he apprehended Nicely in the checkout line. Nicely likewise testified she was in the checkout line when stopped by Strickland. Fox testified she had cleared the checkout line.

After Fox descended from the catwalk, both women were taken to the confrontation room, where Strickland questioned Nicely and Fox questioned Miller. As a matter of general procedure, Strickland attempted to have the women sign statements admitting the attempted shoplifting. They refused and were turned over to law

enforcement authorities.

Fox told the police he observed both women conceal the cigarettes in Nicely's purse and attempt to leave without paying. He filed a shoplifting incident report against Miller based on his observations, and Strickland filed one against Nicely. The reports, which Fox verified as true and correct, stated that Miller and Nicely were facing each other as Nicely put the cigarettes in her purse. Fox initiated the criminal prosecution against Miller and testified at the trial of Nicely, who was convicted of theft by shoplifting.

When Miller's criminal defense attorney Steve Cook (who is also one of the lawyers representing her in this suit) threatened to sue Fox, Fox contacted Cook and executed an affidavit in which he stated he had not observed Miller conceal any shoplifting by Nicely or attempt to assist Nicely in shoplifting. The criminal charges against her were nolle prossed because of Fox's affidavit. In exchange, Miller executed a covenant not to sue Fox.

Big Star did not learn of the covenant until it deposed Fox, although in a transcript of a recorded telephone conversation between Cook and Fox, Cook assured Fox he had made Big Star aware of the covenant. During the conversation, Fox informed Cook that Big Star's attorney had attempted to contact him and that he, Fox, was apprehensive about having to be deposed or appear in court. Cook attempted to assure Fox that the case would be settled and suggested that he "remain on the sidelines for a little bit. . . ." Following this advice, Fox refused to talk to Big Star's attorneys and even changed his telephone number to prevent them from contacting him. Because of the resultant delay in subpoenaing Fox, Big Star did not serve Miller with notice it would depose him until after discovery closed. Miller sought a protective order prohibiting the taking of his deposition, but the court denied the motion.

In deposition Fox revised the statements in his affidavit and testified that, although Miller was at the other end of the grocery aisle when Nicely shoplifted the cigarettes, he did observe Miller "watching out for somebody . . . so Nicely could put the cigarettes in her purse." Nonetheless, he maintained that he would not have prosecuted Miller, because "at the very end" he thought she may have "changed her mind and decided not to assist Nicely in shoplifting." But he testified that he had not told Strickland he did not think Miller was guilty of shoplifting or should not be arrested.

During the recorded telephone conversation, Fox initially stated that, to the best of his recollection, he did not tell Strickland "not to lock [Miller] up." After Cook repeatedly stressed how important it would be to Miller's case if Fox had made such a statement, Cook again asked whether Fox had told Strickland not to arrest Miller. Fox responded, "Uh, I believe I did it's been a while. . . . I believe that's

what I told him."

In his deposition, Fox initially denied telling Strickland he did not think Miller was guilty of shoplifting or suggesting she not be prosecuted. When shown a transcript of his telephone conversation with Cook, Fox testified he did not remember what he had told Strickland. Strickland testified that Fox never made any such statement, and neither Miller nor Nicely testified they heard anything said to that effect.

1. The court erred in denying Big Star's motion for summary judgment on Miller's claim for malicious prosecution, because the criminal prosecution against her terminated as a result of her covenant not to sue Fox. Although the covenant is not in the record, it is undisputed that one was executed.

" 'It is essential to the maintenance of an action for malicious prosecution that the plaintiff shall prove that the prosecution not only terminated, but terminated in [her] favor. (Cit.) Such termination may be caused by the voluntary abandonment of the case by the party who instituted the prosecution. But the rule seems to be well settled that where the termination of the prosecution has been brought about by compromise and agreement of the parties, an action for malicious prosecution can not be maintained. (Cit.)' [Cit.]"[1]

2. The trial court also erred in denying Big Star's motion for summary judgment insofar as Miller seeks to hold it liable for false imprisonment, assault and battery on a theory of respondeat superior based on the conduct of Fox.

Where an employer's liability for the tortious acts of its employee rests on the doctrine of respondeat superior, a covenant not to sue the employee bars the plaintiff from maintaining an action against the employer. *Posey v. Med. Center-West*[2] and *Harris v. Hanna Creative Enterprises*[3] combine to produce this principle.

"The holding in *Posey*[, supra,] abolished in Georgia the venerable rule that the release of one tortfeasor works a discharge of all other joint tortfeasors. It replaced that rule with the common-sense idea that a release discharges only the parties it was intended to release. . . . [Cit.]" *Thornton v. Ware County Hosp. Auth.*[4] *Posey* also abolished the distinction between a release and covenant not to sue in the area of torts.[5] "In *Harris*[, supra], this court held that an employer whose liability for the negligent acts of its employee rests only on the doctrine of respondeat superior is not a joint tortfeasor to

---

[1] *Laster v. Star Rental*, 181 Ga. App. 609 (1) (353 SE2d 37) (1987).
[2] 257 Ga. 55 (354 SE2d 417) (1987).
[3] 208 Ga. App. 549 (430 SE2d 846) (1993).
[4] 215 Ga. App. 276, 277 (1) (450 SE2d 260) (1994).
[5] *Crim v. Jones*, 204 Ga. App. 289, 290, n. 1 (419 SE2d 130) (1992).

whom the rule set forth in *Posey* applies. A claim against such an employer is, therefore, barred by a previous release of the employee. [Cit.]"[6] *Thornton* recognized that under the law as it existed prior to *Posey*, the execution of a covenant not to sue the employee did not bar the plaintiff from maintaining an action against the employer. Conversely, under current law, the execution of a covenant not to sue the employee does bar plaintiff from suing the employer.

3. Big Star was likewise entitled to summary judgment on Miller's claim for false imprisonment based on Strickland's conduct.

Under OCGA § 51-7-60, the owner or operator of a mercantile establishment and its agents and employees are given qualified immunity from claims of false imprisonment arising from the detention or arrest of suspected shoplifters where both conditions (1) and (2) of the statute are met.[7] Under the first, it must be shown that the owner, operator, agent, or employee reasonably believed that the person detained was engaged in shoplifting.[8] Under the second, the manner of detention or arrest and the length of time during which the plaintiff was detained must be reasonable.[9]

Arguments advanced by the parties raise the following questions: (a) Did the facts related by Fox lead Strickland reasonably to believe Miller was engaged in shoplifting? (b) Was Strickland's manner of detaining Miller unreasonable because his conduct violated guidelines for the apprehension and prosecution of suspected shoplifters contained in a Big Star employees' manual?

(a) The facts undisputably related by Fox to Strickland from the store's catwalk provided a reasonable basis for Strickland's detention of Miller. The statement made by Fox to Cook during the recorded telephone conversation, to the effect that Fox later told Strickland Miller should not be turned over to police, does provide some evidence in support of her claim of malicious prosecution. But that claim is barred for reasons given in Division 1, supra.

(b) Miller argues that Strickland's manner of detaining her was unreasonable because he violated guidelines in the employees' manual prohibiting him from touching her, attempting to take her confession, or accusing her of stealing.

Where, as here, the employee is authorized to detain suspected shoplifters, the manual does not prohibit such employee from touching the suspect or attempting to take a confession. Although the manual does prohibit a security guard from using the words "steal or stole," there is no evidence Fox or Strickland uttered these words.

[6] *Thornton*, supra.
[7] *Gerry v. K-Mart*, 222 Ga. App. 364, 365 (2) (474 SE2d 260) (1996).
[8] *Kemp v. Rouse-Atlanta, Inc.*, 207 Ga. App. 876, 878 (2) (429 SE2d 264) (1993).
[9] *Brown v. Super Discount Markets*, 223 Ga. App. 174 (477 SE2d 839) (1996).

The evidence does not support Miller's claim that Strickland's manner of detaining her was in violation of Big Star's written guidelines and was unreasonable. Moreover, failure to adhere to such guidelines does not necessarily demonstrate unreasonableness, just as compliance with such guidelines does not automatically demonstrate reasonableness.[10]

4. Similarly, Big Star should have been granted summary judgment on Miller's claims of assault and battery for Strickland's conduct.

An assault occurs " '[w]here all the apparent circumstances, reasonably viewed, are such as to lead a person reasonably to apprehend a violent injury from the unlawful act of another.' "[11] No evidence is referenced to show that Miller was placed in such fear. Although any unlawful touching is a physical injury to the person and actionable as a battery,[12] Strickland's act of detaining Miller was legally authorized and consequently did not constitute a battery.

5. The court erred in denying Big Star's motion for summary judgment as to Miller's claim against it for negligent supervision of Strickland and Fox. The claim is based on assertions that in detaining and deciding to prosecute her, Strickland and Fox violated written guidelines of Big Star of which they were unaware. Issues relating to some of the alleged violations have been resolved in Division 2, supra. This division resolves the remaining issues as to this cause of action.

Big Star's supervisory security personnel gave Strickland and Fox on-the-job training. Although the two men were never given a copy of the policy manual itself, they were given other pertinent written materials and were verbally provided with guidelines for detaining and prosecuting suspected shoplifters.

The Big Star manual specifies that a suspected shoplifter should not be stopped "prior to clearing checkout" and should be prosecuted only when he or she has "concealed the merchandise prior to going to the checkout line and the individual cleared the checkout with the merchandise and without paying for it." These guidelines extend more protection to shoplifting suspects than is legally required, as there are circumstances in which an individual who has taken possession of and concealed store merchandise is chargeable with shoplifting even though he or she has not passed through the checkout line or exited the store without paying. In *Racquemore v. State*,[13] for

---

[10] *Luckie v. Piggly-Wiggly Southern*, 173 Ga. App. 177, 179 (2) (325 SE2d 844) (1984); *Brown v. Winn-Dixie Atlanta*, 194 Ga. App. 130, 132 (389 SE2d 530) (1989).

[11] *Kemp v. Rouse-Atlanta, Inc.*, supra, 207 Ga. App. at 880 (3).

[12] *Haile v. Pittman*, 194 Ga. App. 105, 106 (3) (389 SE2d 564) (1989).

[13] 204 Ga. App. 88 (1) (418 SE2d 448) (1992).

example, defendant was seen stuffing two packages of meat into the waist of his trousers and pulling his shirt down over them. Although he returned this merchandise to the display case after store personnel who were watching his actions began following him, the evidence was sufficient to support his conviction of theft by shoplifting.

Strickland was verbally instructed that under circumstances such as those present in *Racquemore*, he could detain a suspected shoplifter before the suspect cleared the checkout line. Big Star is not chargeable with negligence for this instruction. It is uncontested that Strickland stopped Nicely because he was informed by Fox that she had surreptitiously placed the cigarettes in her purse. Given this representation by Fox, Strickland's decision to stop her before she cleared the checkout line was not unreasonable.[14]

Although Fox and Strickland were required to fill out incident reports after detaining suspected shoplifters, they were not told to put anything in the reports that was not true. Both testified they were instructed not to detain anyone unless they were absolutely sure the suspect had shoplifted store merchandise. Consistent with these instructions, they were told to prosecute any suspect who had been detained unless the suspect signed a form agreeing to pay a civil recovery. Any decision by Fox or Strickland to arrest Miller for shoplifting, even though they were not certain she had aided and abetted Nicely, would have been contrary to clear directives given during their training and thus would not be chargeable to negligent supervision by Big Star.

6. It was error to deny Big Star's motion for summary judgment on Miller's claim for negligent hiring and retention of Strickland and Fox.

An employer's liability for negligent hiring or retention of an employee requires proof that the employer knew or should have known of the employee's propensity to engage in the conduct which caused the plaintiff's injury.[15] There is no evidence Big Star knew or should have known of any propensity by Strickland or Fox to arrest suspected shoplifters without reasonable suspicion.

7. Big Star has also raised issues concerning whether attorney Cook violated Standards 46, 47, 48, 56, and 57 of Rule 4-102 of the Rules & Regulations of the State Bar of Georgia. Since Big Star did not move to exclude evidence or dismiss claims because of these alleged violations, the issues have not been adjudicated at the trial level and therefore have not been preserved for appellate review.

---

[14] The reasonableness of a detention is usually but not always a jury question. See *Brown v. Super Discount Markets*, supra, and cits.

[15] *Fortune v. Principal Financial Group*, 219 Ga. App. 367, 371 (1) (465 SE2d 698) (1995).

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JUNE 4, 1998 —
RECONSIDERATION DENIED JUNE 15, 1998 —

*Sullivan, Hall, Booth & Smith, Robert L. Shannon, Jr.*, for appellant.

*Steven L. Beard, Steven A. Cook*, for appellee.